1  **CARMEN A. TRUTANICH**, City Attorney (SBN 86629X)
   **KENNETH FONG**, Deputy City Attorney (SBN 140609)
2  **COLLEEN M. COURTNEY**, Deputy City Attorney (SBN 134187)
   200 North Main Street
3  700 City Hall East
   Los Angeles, CA 90012
4  Telephone Number: (213) 978-8083
   Fax Number: (213) 978-8214
5  E-mail: Colleen.Courtney@lacity.org

6  Attorneys for Defendant
7  **CITY OF LOS ANGELES**

8

9                 **UNITED STATES DISTRICT COURT**

10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  WEST VALLEY CAREGIVERS, et al, | ) **Case No.** CV 10-4150 SJO(AJWx) |
| 13 | ) Honorable S. James Otero |
| 14              Plaintiffs, | ) Date Filed: June 4, 2010 |
| 15       vs. | ) **NOTICE OF MOTION AND MOTION** |
| 16  CITY OF LOS ANGELES, a California | ) **TO DISMISS COMPLAINT;** |
|     charter city | ) **MEMORANDUM OF POINTS AND** |
| 17 | ) **AUTHORITIES IN SUPPORT** |
|              Defendant. | ) **THEREOF** |
| 18 | ) [F.R.C.P. RULES 12(b)(1) and 12(b)(6)] |
| 19 | ) [REQUEST FOR JUDICIAL NOTICE |
| 20 | ) FILED CONCURRENTLY HEREWITH] |
| 21 | ) DATE:  July 19, 2010 |
| 22 | ) TIME:   10:00 a.m. |
|  | ) COURTROOM:  1 (Spring Street) |

23

24  TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

25       PLEASE TAKE NOTICE that on July 19, 2010, at 10:00 a.m., or as soon

26  thereafter as the matter may be heard in Courtroom 1 of the Honorable S. James Otero,

27  United States District Court Judge, of the U.S. District Court for the Central District of

28

California, located at 312 N. Spring Street, Los Angeles, California, defendant City of Los Angeles (the "City") will move the Court for an order to dismiss Plaintiffs' Complaint For (1) Violation of the Fourteenth Amendment, Equal Protection; (2) Violation of the Fifth Amendment and Fourteenth Amendment, Deprivation of Property Without Due Process of Law; and (3) Violation of 42 U.S.C. § 1983 (the "Complaint") on the following grounds:

> (1) The *Younger* abstention doctrine requires this Court to dismiss and the *Pullman* abstention doctrine requires this Court to stay this lawsuit because there are already numerous lawsuits involving these same legal issues pending in state court; F.R.C.P. Rule 12(b)(1);

> (2) The First Claim for Relief (Violation of the Fourteenth Amendment, Equal Protection) does not state facts sufficient to support a claim for relief because Plaintiff has no standing to pursue this claim.  F.R.C.P. Rule 12(b)(1) and (6);

> (3) The Second Claim for Relief (Violation of the Fifth Amendment and Fourteenth Amendment, Deprivation of Property Without Due Process of Law) does not state facts sufficient to support a claim for relief because Plaintiff has no standing to pursue this claim.  F.R.C.P. Rule 12(b)(1) and (6); and

> (4) The Third Claim for Relief (Violation of the 42 U.S.C. § 1983) does not state facts sufficient to support a claim for relief because Plaintiff has no standing to pursue this claim.  F.R.C.P. Rule 12(b)(1) and (6).

PLEASE TAKE FURTHER NOTICE that if Plaintiffs plan to oppose the relief requested by this Motion, they must do so in writing and in a manner that complies with any orders issued by the Court in the above-referenced matter and the rules of practice and procedure of this Court.

1    This Motion is based upon this Notice, the Memorandum of Points and Authorities
2  and Request for Judicial Notice filed herewith, all pleadings, files and records herein, and
3  such further evidence and argument as may be presented at the hearing on this Motion.
4    This Motion is made following the conference of counsel pursuant to Local Rule 7-
5  3, which took place on June 16, 2010.

7  Dated:  June 25, 2010        **CARMEN A. TRUTANICH**, City Attorney
                                 **KENNETH FONG**, Deputy City Attorney
8                                **COLLEEN M. COURTNEY**, Deputy City Attorney

9                                By:  _____
10                                    COLLEEN M. COURTNEY
                                      Deputy City Attorney
11
                                 Attorney for Defendant
12                               **CITY OF LOS ANGELES**

# TABLE OF CONTENTS

PAGE(S)

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I. INTRODUCTION ............................................................................................. 1

II. FACTS ........................................................................................................... 3

    A. California's medical marijuana laws. .......................................................... 4

    B. The City's Medical Marijuana Ordinance. .................................................. 5

    C. The City's applicable zoning regulations. ................................................... 6

    D. A number of pending state court actions raise the very same claims as this
       lawsuit. ...................................................................................................... 7

    E. Locations of Plaintiffs' illegal marijuana dispensaries. .............................. 8

III. DISCUSSION ............................................................................................... 9

    A. Standards for Rule 12(b) motions. .............................................................. 9

    B. Both the *Younger* and *Pullman* abstention doctrines apply here. ................ 10

        1. *Younger* doctrine. ............................................................................... 10

        2. *Pullman* Doctrine. .............................................................................. 11

    C. Plaintiffs lack standing. ............................................................................ 12

        1. Plaintiffs' equal protection claim fails to state a claim. ....................... 13

        2. Plaintiffs' due process and vested rights claims fail to state a claim for
           relief. .............................................................................................. 17

    D. Plaintiffs' 42 U.S.C. § 1983 claim fails as a matter of law. ...................... 19

IV. CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.,*
   436 F.3d 82, n.6 (2d Cir. 2006)..................................................................... 1

*Avco Community Developers v. South Coast Regional Com.,*
   17 Cal. 3d 785 (1976)........................................................................... 17, 18

*Bellotti v. Baird,*
   428 U.S. 132, 96 S. Ct. 2857, 2864 n.10 (1976)......................................... 10

*Bradley v. Public Utilities Com.,*
   289 U.S. 92, 53 S. Ct. 577; 77 L. Ed. 1053 (1933)................................. 14, 17

*Burns v. Des Peres,*
   534 Fed.2d 103 (8th Cir. 1976).................................................................. 15

*Cedar Shake and Shingle Bureau v. City of Los Angeles,*
   997 F.2d 620 (9th Cir. 1993)...................................................................... 12

*City of Claremont v. Kruse,*
   177 Cal.App.4th 1153 (2009)............................................................ 4, 13, 18

*City of Corona v. Naulls,*
   166 Cal.App.4th 418 (2008)....................................................................... 18

*City of National City v. Wiener,*
   3 Cal. 4th 832 (1992)................................................................................. 15

*City of New Orleans v. Dukes,*
   427 U.S. 297; 96 S. Ct. 2513; 49 L. Ed. 2d 511 (1976)....................... 14, 15, 17

*City of Renton v. Playtime Theatres. Inc.,*
   475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986)............................... 6, 15

*Clay Lacy Aviation v. City of L.A.,*
   2001 U.S. Dist. LEXIS 24492 (C.D. Cal. June 14, 2001) ............................ 15

TABLE OF AUTHORITIES Cont'd

PAGE(S)

**Cases**

*Consaul v. City of San Diego,*
   6 Cal.App.4th 1781 (1992)...................................................................................19

*Del Oro Hills v. City of Oceanside,*
   31 Cal.App.4th 1060 (1995)...............................................................................16

*DeSpain v. Johnston,*
   731 Fed.2d 1171 (5th Cir. 1984).........................................................................11

*Durham v. City of Los Angeles,*
   91 Cal.App.3d 567 (1979)...................................................................................14

*Fort Belknap Indian Community v. Mazurek,*
   43 Fed.3d 428 (9th Cir. 1994).............................................................................11

*Green v. City of Tucson,*
   255 Fed.3d 1086 (9th Cir. 2001)........................................................................11

*Gunkel v. City of Emporia,*
   835 F.2d 1302 (10th Cir. 1987)...........................................................................17

*Heller v. Doe,*
   509 U.S. 312; 113 S. Ct. 2637; 125 L. Ed. 2d 257 (1993)...............................13

*Ileto v. Glock, Inc.,*
   349 F.3d 1191 (9th Cir. 2003).............................................................................9

*Int'l Action Ctr. v. City of New York,*
   587 Fed.3d 521 (2nd Cir. 2009) ..........................................................................15

*Isthmus Landowners Assoc. v. State of California,*
   601 F. 2d 1087 (9th Cir. 1979)...........................................................................12

*Kokkonen, supra,*
   511 U.S. at 377 (1994). ........................................................................................9

TABLE OF AUTHORITIES Cont'd

PAGE(S)

**Cases**

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001)..................................................................10

*Los Angeles Free Press, Inc. v. City of Los Angeles,*
  9 Cal. App. 3d 448 (1970)......................................................................14

*Martinet v. Dep't of Fish & Game,*
  203 Cal. App. 3d 791 (1988)..................................................................17

*McCarthy v. California Tahoe Regional Planning Agency,*
  129 Cal. App. 3d 222 (1982)..................................................................19

*Middlesex Co. Ethics Comm. v. Garden State Bar Assoc.,*
  457 U.S. 423, 432 and 435-37; 102 S. Ct. 2515; 73 L. Ed. 2d 116 (1982) ...................10

*Mission Oaks Mobile Home Park v. City of Hollister,*
  989 Fed.2d 359 (9th Cir. 1993)..............................................................11

*People ex rel. Lungren v. Peron,*
  59 Cal.App.4th 1383 (1997).....................................................................4

*People v. Health Laboratories,*
  87 Cal.App.4th 442 (2001).....................................................................13

*People v. Mentch,*
  45 Cal.4th 274, 286, fn. 7 (2008) ..........................................................4, 5

*People v. Mower,*
  28 Cal.4th 457 (2002).............................................................................4

*People v. Urziceanu,*
  132 Cal.App.4th 747 (2005)....................................................................4

*Pettit v. City of Fresno,*
  34 Cal.App.3d 813 (1973).....................................................................18

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Railroad Comm'n of Texas v. Pullman Co.*,
312 U.S. 496, 61 S.Ct. 643 (1941) ............................................... 1, 2, 10, 11, 12

*Rancho Palos Verdes Corp. v. City of Laguna Beach*,
547 F.2d 1092 (9th Cir. 1976) ........................................................................ 12

*Roberts v. Corrothers*,
812 F.2d 1173 (9th Cir. 1987) .......................................................................... 9

*Ross v. RagingWire Telecommunications, Inc.*,
42 Cal.4th 920 (2008) ....................................................................................... 4

*Sacks v. Office of Foreign Assets Control*,
466 F.3d 764 (9th Cir. 2006) ........................................................................ 10

*San Remo Hotel v. City & County of San Francisco*,
145 Fed.3d 1095 (9th Cir. 1998) ................................................................... 11

*Santa Fe Land Improvement Co. v. City of Chula Vista*,
596 F. 2d 838 (9th Cir. 1979) ....................................................................... 12

*Santa Margarita Area Residents Together v. San Luis Obispo County Bd. of Supervisors*,
84 Cal. App. 4th 221 (2000) .......................................................................... 18

*Stubblefield Construction Co. v. City of San Bernardino*,
32 Cal.App.4th 687 (1995) ............................................................................ 16

*Wawa, Inc. v. New Castle County*,
391 Fed. Supp. 2d 291 (D. Del. 2005) ........................................................... 16

*Younger v. Harris*
401 U.S. 37, 44; 91 S. Ct. 746; 27 L. Ed. 2d 669 (1971) .............................. 10

**Statutes**

Federal Rule of Civil Procedure:

Rule 12(b)(1) ................................................................... 2, 9, 10

Rule 12(b)(6) ..................................................................... 9, 10

Federal Controlled Substances Act:

21 U.S.C. § 801 *et seq.* ..................................................... 13

Government Code:

Section 65958(a) ..................................................................... 5

Section 65958(b) ..................................................................... 5

Health & Safety Code:

Section 11362.5 et seq. ............................................................. 4

Section 11362.7 et seq. ............................................................. 5

Section 11362.765 ................................................................... 5

Section 11362.775 ................................................................... 5

Section 11362.83 ..................................................................... 5

Los Angeles Municipal Code:

Section 12.04.05B ..................................................................... 6

Section 12.21A1(a) ................................................................... 6

Section 12.27D(1)-(5) ................................................................ 7

Section 21.01 ......................................................................... 19

Section 21.08 ......................................................................... 19

Section 12.21A2 ....................................................................... 7

Section 12.27 ......................................................................... 7

Section 91.103.1 ..................................................................... 7

Section 11357 ......................................................................... 4

Section 11358 ......................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

More than 27 lawsuits challenging the City's Medical Marijuana Ordinance are already pending in the state courts, with the majority of them having been filed prior to the present action.  The *Younger* abstention doctrine, which requires a federal court to abstain from hearing a federal court case where a similar state court action is already pending, applies to the instant case.

All three elements of the test to determine if *Younger* abstention is required are satisfied here.  The first element, which requires that the dispute involve an ongoing state judicial proceeding, is easily satisfied by the multiple state court lawsuits already pending.  The second element, which requires that the state have an important interest in regulating the subject matter of the claim, is also easily satisfied because regulation of the number and location of marijuana dispensaries, as with any other local public safety and land use regulations, is a matter of peculiar local concern.  The third element, which requires that the Plaintiffs have the opportunity to raise its claims in the pending state court actions, is satisfied because a number of the named Plaintiffs are also plaintiffs in a state court action, or could easily intervene in an existing state court action.  Because the test for *Younger* abstention is satisfied, the *Younger* doctrine requires this Court to dismiss the instant action.

Although dismissal under *Younger* is fully dispositive of this matter, *Pullman* abstention also applies here.  *Pullman* abstention requires a federal court to stay the matter before it while a state court resolves an issue of state law, as distinguished from *Younger* abstention which requires dismissal of the federal court action.

All three elements of the *Pullman* doctrine are satisfied with respect to Plaintiffs' due process claim.  The first requirement—that the lawsuit involves a sensitive area of social policy of peculiar concern to the states—is satisfied because the public safety, crime, land use regulation of marijuana dispensaries is a such a sensitive area of social

1   policy.  The second requirement is that a definitive ruling on the state court issue would

2   eliminate the need to reach the constitutional issues before the federal court.  This

3   requirement is satisfied as to plaintiffs' due process claim.  The reason is that if a state

4   court were to find that plaintiffs have no vested right to operate their businesses, plaintiffs

5   would not be entitled to due process protections relating to such a vested right and there

6   would be no need for this Court to decide plaintiffs' due process claim.  The third

7   requirement is that the particular issue of state law has not yet been definitely ruled upon

8   by the state courts.  This requirement is satisfied because the state courts have not yet had

9   an opportunity to decide whether, under the facts in this case, Plaintiffs' illegal operation

10  of marijuana dispensaries gives rise to any vested rights.

11      Thus, *Pullman* abstention applies to Plaintiffs' due process claim and would

12  require this Court to stay the federal litigation on that claim until the state courts resolve

13  the underlying state law issues.

14      Plaintiffs also lack standing.  Standing requires that a plaintiff possess a legally

15  protected interest, which is not the case here.  Plaintiffs operate unlawful marijuana

16  dispensaries, as distinct from the lawful collectives regulated by the Ordinance, whose

17  members jointly participate in medical marijuana cultivation.  Because Plaintiffs have no

18  legal rights to operate their marijuana dispensaries, and to any associated due process

19  protections of such legal rights, Plaintiffs have no standing to challenge the City's

20  Ordinance.

21      Plaintiffs also have no viable equal protection claim because they have failed to

22  allege facts showing that they are "similarly situated" to those collectives that properly

23  registered by the cutoff date of November 13, 2007.

24      The ever-growing number of lawsuits challenging the City's Medical Marijuana

25  Ordinance already pending in state court have stirred up a considerable amount of

26  confusion and consumed an inordinate amount of judicial resources.  There is no good

27  reason for a district court to enter this tempest.  In fact, the abstention doctrines forbid it

28  from doing so.

1    For all these reasons, the City respectfully asks this Court to dismiss this case in its

2    entirety.

3                                              **II.**

4                                            **FACTS**

5    California cities have been besieged in the last few years by an onslaught of

6    marijuana dispensaries purporting to operate under the auspices of Proposition 215,

7    approved by California voters in 1996 and commonly known as the Compassionate Use

8    Act, and Senate Bill 420 adopted by the Legislature in 2003, commonly known as the

9    Medical Marijuana Program Act.  More than six hundred such dispensaries have cropped

10   up in the City of Los Angeles, without any City land use approvals, featuring the illegal

11   sale of marijuana, and posing significant threats to public safety and welfare.

12   In January 2010, the City, in response to the serious concerns of several law

13   enforcement agencies and the community at large, enacted Ordinance 181069, commonly

14   referred to as the City's Medical Marijuana Ordinance.  To provide plenty of time for

15   patients, dispensaries, and residents to understand and come into compliance with its

16   provisions, the effective date of the Ordinance was purposefully delayed until June 7,

17   2010.

18   The Ordinance limits, among other things, the location and number of collectives.

19   (Request For Judicial Notice ("RJN"), Exh. C.) The Ordinance also divides collectives

20   into two applicant pools.  The first applicant pool is limited to collectives that previously

21   evidenced their willingness to subject themselves to law enforcement and civic regulation

22   by continuously operating at one location since September 14, 2007 (or who moved once

23   under threat of DEA action), and by registering with the City Clerk by November 13,

24   2007.  The second applicant pool is comprised of all other medical marijuana providers,

25   whose applications will be considered if, after the City processes the first applicant pool,

26   more collectives are needed to raise the number of compliant collectives within the City

27   to 70.  Applicants in both pools will be rejected unless they abide by all of the state and

28   local regulatory terms.

1    Plaintiffs in this action fall into the second applicant pool because they did not

2    timely register with the City Clerk by November 13, 2007.

3    **A. California's medical marijuana laws.**

4    <u>Compassionate Use Act (Proposition 215)</u>:  In 1996, voters approved the

5    Compassionate Use Act ("CUA") as a ballot initiative.  Health & Safety Code § 11362.5

6    et seq.  The CUA provides a limited defense from criminal prosecution for cultivation

7    and possession of marijuana for medical purposes, where recommended by a physician

8    for treatment of several illnesses including cancer, anorexia, AIDS, chronic pain,

9    spasticity, glaucoma, arthritis and migraine.  The defense is available only to "patients

10   and primary caregivers," and in response to prosecution for only two criminal offenses:

11   section 11357 (possession) and section 11358 (cultivation).  *People ex rel. Lungren v.*

12   *Peron*, 59 Cal.App.4th 1383, 1400 (1997); see also *People v. Mower*, 28 Cal.4th 457

13   (2002)(The CUA does not provide an absolute defense to arrest and prosecution.)

14   The statute's reach is narrow, limited only to providing a defense from criminal

15   prosecution.  There is no "constitutional right to obtain marijuana." *People v. Urziceanu*,

16   132 Cal.App.4th 747, 774 (2005).  The CUA does not authorize the sale or nonprofit

17   distribution of marijuana. *City of Claremont v. Kruse*, 177 Cal.App.4th 1153, 1170-71

18   (2009).  The right granted is limited to the right of a patient or primary caregiver to

19   possess or cultivate marijuana for the patient's personal medical use upon the approval of

20   a physician without becoming subject to criminal liability. *Ross v. RagingWire*

21   *Telecommunications, Inc.*, 42 Cal.4th 920, 929 (2008).  The CUA "is a narrow measure

22   with narrow ends." *People v. Mentch*, 45 Cal.4th 274, 286, fn. 7 (2008).  "The CUA

23   does not authorize the operation of a medical marijuana dispensary [citations] nor does it

24   prohibit local governments from regulating such dispensaries." *City of Claremont* at

25   1173.  "Nothing in the text or history of the CUA suggests it was intended to address

26   local land use determinations or business licensing issues." *Id.* at 1175

27   <u>The Medical Marijuana Program Act (Senate Bill 420)</u>:  In 2003, the Legislature

28   enacted Senate Bill 420 known as the Medical Marijuana Program Act ("MMPA").

1    Health & Saf. Code § §11362.7 *et seq*. Although a legislative enactment cannot alter or

2    expand a voter initiative, the MMPA does purport to add to the scope of criminal

3    immunities relative to medical marijuana, but only as to a limited set of persons for a

4    limited set of activities. The MMPA provides qualified patients, primary caregivers, and

5    holders of valid identification cards with an affirmative defense to limited enumerated

6    penal sanctions for transporting, processing, administering, or giving away marijuana to

7    qualified persons for medical use. Health & Safety Code § 11362.765; *Mentch* at 290-

8    291. It also provides a new affirmative defense to criminal liability for qualified patients,

9    caregivers, and holders of valid identification cards who collectively or cooperatively

10   cultivate marijuana for medical purposes. Health & Safety Code § 11362.775. The

11   MMPA does not bar local governments from prohibiting or regulating collectives.

12   Rather, like the CUA, the MMPA expressly allows local regulation. Health & Safety

13   Code § 11362.83 ("Nothing in this article shall prevent a city or other local governing

14   body from adopting and enforcing laws consistent with this article.").

15   **B. The City's Medical Marijuana Ordinance.**

16        Plaintiffs challenge the City's Interim Control Ordinances, 179027 and 180749

17   (the "ICO"), and the Permanent Medical Marijuana Ordinance, Ordinance 181069. The

18   ICO has expired.[1] Ordinance 181069, adopted on January 26, 2010, became operative on

19   June 7, 2010. ("RJN"), Exhs. A, B, C.)

20        The Medical Marijuana Ordinance is a public safety ordinance which, among other

21   requirements, limits the number of collectives and prohibits them from operating within

22   1,000 feet of sensitive uses. It also imposes operational regulations, including hours,

23   testing of medical marijuana, audits, and inspections. It provides the first opportunity to

24   meet these requirements to those collectives that registered with the City prior to

---

26   [1] On October 19, 2009, in *Los Angeles Collective et al. v. City of Los Angeles*, LASC
     Case No. BC 422215, the Honorable James C. Chalfant, enjoined the City from enforcing
27   the ICO against plaintiff Westside Green Oasis, as of that date, on the procedural ground
     that the ICO then exceeded the term available to an interim measure. Gov't Code §§
28   65958(a) and (b).

1   November 13, 2007. It requires all collectives that did not register by November 13,
2   2007 to close by June 7, 2010. At the end of six months, the Ordinance anticipates a
3   second opportunity to register for all other collectives, including those that closed, if the
4   City has not, by that time, reached a cap of 70 collectives out of the first batch of
5   registrants. ("RJN"), Exh. C.)

6        The Ordinance neither regulates a patient's right to use medical marijuana nor
7   criminalizes the possession or cultivation of medical marijuana as authorized by State
8   law. Rather, it regulates the total number, appropriate locations, and operating conditions
9   of "collectives" in response to, among other things, reports by law enforcement
10  identifying marijuana dispensaries as hubs for violent crime and illegal activities
11  including the illegal diversion of marijuana into the local communities. The right and
12  obligation of government to regulate and prohibit uses inconsistent with the public heath
13  and welfare is universally recognized. See e.g., *City of Renton v. Playtime Theatres. Inc.*,
14  475 U.S. 41, 46-49, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986)(Upholding regulation
15  prohibiting adult motion picture theaters from locating within 1,000 feet of any
16  residential zone, church, park or school.).

17  **C. The City's applicable zoning regulations.**

18       Typical of municipal zoning codes, the only uses allowed in any given zone in the
19  City are those expressly enumerated in the Los Angeles Municipal Code ("LAMC"). All
20  other uses are expressly prohibited. LAMC § 12.04.05B ("[N]o building, structure or
21  land shall be used and no building or structure shall be erected, moved onto the site,
22  structurally altered, enlarged or maintained, except for the following uses.") ("RJN"),
23  Exh. E.)

24       The City's comprehensive zoning code has never allowed a marijuana facility in
25  any zone, except as prescribed by the Ordinance which took effect on June 7, 2010. The
26  LAMC prohibits uses of land for which all required approvals have not been obtained.
27  LAMC § 12.21A1(a)("[No] building, structure, or land [shall] be used or designated to be
28  used for any use other than is permitted in the zone in which such building, structure, or

1    land is located and then only after applying for and securing all permits and licenses

2    required by all laws and ordinances."); and § 91.103.1 ("No person shall construct, alter,

3    repair, demolish, move, use, occupy or maintain within the City, any building or structure

4    or any portion thereof, except as provided by this Code." ("RJN"), Exhs. L, O.)

5        The LAMC requires any person seeking to establish a new enumerated use to

6    apply for a Zoning Administrator Interpretation ("ZAI").  LAMC Section 12.21A2 vests

7    the OZA with authority to determine permissible uses in addition to those specifically

8    listed in the code.  A person aggrieved by any ZAI Determination may appeal to an Area

9    Planning Commission or the City Planning Commission, depending upon whether the

10   determination has site-specific or citywide impacts, respectively. ("RJN"), Exh. L.)

11       In addition to a ZAI, any person may apply for a variance from the zoning

12   regulations with respect to a specific piece of land.  LAMC Section 12.27 vests the ZA

13   with authority to grant use variances where strict application of the code would result in

14   practical difficulties or unnecessary hardship, and where not materially detrimental to the

15   public welfare or adverse to any element of the General Plan.  LAMC § 12.27D(1)-(5).

16   No variance applications have been filed for a medical marijuana use of any kind in the

17   City.  ("RJN"), Exh. L.)

18   **D. A number of pending state court actions raise the very same claims as this**

19       **lawsuit.**

20       The Complaint seeks to enjoin the City from enforcing the Ordinance, a public

21   safety ordinance, on the grounds that it purportedly violates plaintiffs' rights to equal

22   protection and due process, the very same issues now before the state courts in over two

23   dozen lawsuits against the City.  The state court suits allege that the Ordinance violates

24   due process and vested rights obtained by reason of tax certificates and similar non-land

25   use documents obtained by plaintiffs; is inconsistent with state law; violates equal

26   protection; violates state constitutional rights guaranteeing access to medical marijuana;

27   violates patient privacy rights; and constitutes a taking of property without just

28   compensation.  This federal court lawsuit raises the same due process and equal

7

1 | protection claims as the state court lawsuits.

2 | **E. Locations of Plaintiffs' illegal marijuana dispensaries.**

3 | All 14 Plaintiffs in this case allege that they are "private member associations"

4 | which are "unable to apply for registration under Los Angeles City Ordinance 181069."

5 | (Complaint ¶ 10-23.)  Plaintiffs maintain marijuana dispensaries at the following

6 | addresses:

7 | • West Valley Caregivers - 23067 Ventura Boulevard, Suite 102, in Woodland

8 | Hills, California.  (Complaint, p. 5, ¶ 10, lines 2-9.)

9 | • Royal Herb Merchant - 18137 Parthenia Avenue, in Northridge, California.

10 | (Complaint, p. 5, ¶ 11, lines 13-16.)

11 | • Herbal Healing Center - 1051 S. Fairfax, in Los Angeles. (Complaint, p. 5, ¶

12 | 12, lines 26-27.)

13 | • Hollywood Compassionate Caregivers - 9224 S. Vermont Avenue, in Los

14 | Angeles.  (Complaint, p. 6, ¶ 13, lines 6-12.)

15 | • Los Angeles Medical Collective – unknown address in Los Angeles.

16 | (Complaint, p. 6 ¶ 14, lines 23-25.)

17 | • Philanthropy Global dba Alleviations - 15720 Ventura Boulevard, in Los

18 | Angeles.  (Complaint, p. 7, ¶ 15, lines 8-11.)

19 | • Pacoima Recovery Collective, Inc. - 136 S. Gaffey Street, in Los Angeles.

20 | (Complaint, p. 7, ¶ 16, lines 22-23.)

21 | • Herbal Love Caregivers - 3715 Cahuenga Boulevard, in Studio City.

22 | (Complaint, p. 8, ¶ 17, lines 5-7.)

23 | • Café 420 - 4285 Crenshaw Boulevard, in Los Angeles.  (Complaint, p.86, ¶

24 | 18, lines 17-20.)

25 | • Helping Hint Caregivers - 13614 Victory Boulevard, in Van Nuys.

26 | (Complaint, p. 9, ¶ 19, lines 1-3.)

27 | • Traditional Herbal Center, Inc. Collective Caregivers - 4800 S. Central, #B,

28 | in Los Angeles.  (Complaint, p. 9, ¶ 20, lines 16-16.)

- T.L.P.C. - 904 Pacific Avenue, in Venice. (Complaint, p. 9, ¶ 21, lines 25-26.)

- LAHC 3 Collective - 7624 Foothill Boulevard, #A, in Tujuna. (Complaint, p. 10, ¶ 22, lines 7-10.)

- Universal Caregivers Inc. - 13611 Sherman Way, in Van Nuys. (Complaint, p. 10, ¶ 23, lines 20-22.)

### III. DISCUSSION

**A. Standards for Rule 12(b) motions.**

This Motion to Dismiss is predicated on the grounds that: (a) this Court lacks subject matter jurisdiction (F.R.C.P. Rule 12(b)(1)), and (b) the Complaint fails to state a claim upon which relief may be granted (F.R.C.P. Rule 12(b)(6)).

It is a plaintiff's burden to establish subject matter jurisdiction. Until plaintiff proves otherwise, it is presumed the Court lacks jurisdiction. *See e.g. Kokkonen v. Guardian Life Inc. Co. of America,* 511 U.S. 375, 377, 128 L.Ed.2d 391, 395, 114 S.Ct. 1673, 1675 (1994).

In deciding a F.R.C.P. Rule 12(b)(1) motion for lack of subject matter jurisdiction, the court is not limited to the allegations in the Complaint but may also consider extrinsic evidence. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Although the lack of subject matter jurisdiction is an affirmative defense, the burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction, and the Court will presume a lack of jurisdiction until the pleader proves otherwise. *Kokkonen, supra,* 511 U.S. at 377 (1994).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and construe all inferences therefrom in the light most favorable to the nonmoving party. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the

1  Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir.
2  2001).

3      Abstention is a jurisdictional limitation. *Bellotti v. Baird*, 428 U.S. 132, 96 S. Ct.
4  2857, 2864 n.10 (1976).  Therefore, it is proper to raise it through a Rule 12(b)(1)
5  motion.

6      A motion to dismiss for lack of standing can be brought under either Rule 12(b)(6)
7  (*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006))(motion to
8  dismiss for failure to state a claim lies where complaint reveals on its face that plaintiff
9  lacks standing) or Rule 12(b)(1)(*Alliance For Environmental Renewal, Inc. v. Pyramid*
10 *Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)(motion to dismiss for lack of
11 jurisdiction proper because standing is a jurisdictional matter).

12 **B. Both the *Younger* and *Pullman* abstention doctrines apply here.**

13     **1. *Younger* doctrine.**

14     Federal courts must abstain, absent extraordinary circumstances, from hearing a
15 federal court case, where a similar state court action is already pending. *Younger v.*
16 *Harris*, 401 U.S. 37, 44; 91 S. Ct. 746; 27 L. Ed. 2d 669 (1971).

17     The Supreme Court has established the following three-part test to determine
18 when *Younger* abstention is required:  (1) the dispute must involve an ongoing state
19 judicial proceeding; (2) the state must have an important interest in regulating the
20 subject matter of the claim; and (3) there should be an adequate opportunity in the state
21 proceedings to raise constitutional challenges. *Middlesex Co. Ethics Comm. v. Garden*
22 *State Bar Assoc.*, 457 U.S. 423, 432 and 435-37; 102 S. Ct. 2515; 73 L. Ed. 2d 116
23 (1982).

24     All three tests are squarely met here.  With respect to the first part of the test, as
25 described earlier, there are a number of pending state court actions dealing with the very
26 same constitutional issues raised in the present federal court action.  (Courtney Decl.)

27     With respect to the second part of the test, the City's Ordinance arises out of the
28 State's Compassionate Use Act and Medical Marijuana Program Act, both unique

1   creatures of California law and both quite at odds with federal dictates on the topic of

2   marijuana, which remains a federally controlled and banned substance.  Further, the

3   number and location of marijuana shops in the City are local public crime, safety, and

4   land use matters; these topics are of substantial and important local interest.  *Fort*

5   *Belknap Indian Community v. Mazurek*, 43 F.3d 428, 431 (9th Cir. 1994) ([T]here is no

6   question that Montana has a legitimate interest in the enforcement of its liquor laws

7   through criminal prosecution".); and *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir.

8   1984)("The state has a strong interest in enforcing criminal laws.") *Mission Oaks Mobile*

9   *Home Park v. City of Hollister*, 989 F.2d 359, 361 (9th Cir. 1993)[2]; and *San Remo Hotel*

10   *v. City & County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998)(Municipalities

11   have strong interest in local land-use ordinances.).

12        Finally, with respect to the third part of the test, each of the named plaintiffs in the

13   instant lawsuit have the opportunity to raise these constitutional issues in pending state

14   court actions.  The third part of the test puts the burden is on plaintiffs to show that they

15   would not be able to raise their constitutional claims in state court.  Unless plaintiffs can

16   make such a showing, the *Younger* doctrine will require the Court to dismiss this action

17   in its entirety.

18        **2. *Pullman* Doctrine.**

19        The *Pullman* abstention doctrine also applies to plaintiffs' due process claim.

20   Under the *Pullman* doctrine, a federal court may abstain from hearing a case if the

21   constitutional issues raised by plaintiffs in the lawsuit arise only if state law is interpreted

22   in a particular way.  The doctrine encourages federal courts to let a state court first decide

23   any issue of state law, the resolution of which may make litigation of the constitutional

24   issues unnecessary.  *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500, 61 S.

25   Ct. 643, 645 (1941).

26

27

28   [2]  Overruled on other grounds in *Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001); Overruled on
other grounds in *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004).

In *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092 (9th Cir. 1976), the Ninth Circuit set forth three criteria that must be satisfied in order to trigger *Pullman* abstention:

> 1. The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open;
>
> 2. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy; and
>
> 3. The possibly determinative issue of state law is doubtful.

All three requirements are satisfied here. The first requirement is satisfied because the public safety, crime, land use regulation of marijuana shops is a sensitive area of social policy upon which a federal court should not enter. *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 840 (9th Cir. 1979)("land use planning . . . is today a sensitive area of social policy meeting the first Canton requirement); See also *Isthmus Landowners Assoc. v. State of California*, 601 F.2d 1087, 1091 (9th Cir. 1979)("it is settled that land use planning is a sensitive area of social policy for purposes of the Pullman doctrine."); *Cedar Shake and Shingle Bureau v. City of Los Angeles*, 997 F.2d 620 (9th Cir. 1993)(interpretation of local building codes is area of special local concern into which federal intrusion is highly undesirable).

The second requirement is satisfied as to plaintiffs' due process claim. The reason is that if a state court were to find that plaintiffs have no vested right to operate their businesses, plaintiffs would not be entitled to due process protections relating to such a vested right and there would be no need for this Court to decide plaintiffs' due process claim.

The third requirement is satisfied because the state courts have not yet had an opportunity to decide whether, under the facts in this case, plaintiffs' illegal operation of marijuana shops gives rise to any vested rights.

Thus, *Pullman* abstention applies to plaintiffs' due process claim.

**C.  Plaintiffs lack standing.**

1    Plaintiffs lack standing.  Standing is available only to one who asserts the invasion

2    of a legally protected interest.  As explained below, there are no legally protected

3    interests at stake here.  The Complaint challenges the City's Ordinance which regulates

4    medical marijuana collectives.  Pursuant to the Attorney General Guidelines, such

5    collectives must operate without profit, without sales, and with contribution to the

6    cultivation of marijuana by each collective member.  Plaintiffs in this action are unlawful

7    dispensaries that engage in the sale of marijuana to anyone who enters and cursorily signs

8    a "membership" form.  This method of operation has been determined to be unlawful.

9    *City of Claremont v. Kruse*, 177 Cal.App. 4th 1153 (2009).  Further, the sale of marijuana

10   is unlawful under federal statutory law.  Federal Controlled Substances Act 21 U.S.C. §

11   801 *et seq.*

12   **1.  Plaintiffs' equal protection claim fails to state a claim.**

13   With respect to an equal protection challenge, a statutory classification under the

14   California Constitution is analyzed under the same standards that apply to challenges

15   premised on the Fourteenth Amendment to the United States Constitution.  *People v.*

16   *Health Laboratories*, 87 Cal.App.4th 442, 448 (2001).  Furthermore, the interpretation of

17   a statute and determination of whether it violates California's equal protection clause are

18   questions of law.  *Id.* at 444.  Moreover, "legislative classifications are presumed valid

19   and will be sustained if the classification is rationally related to a legitimate state

20   interest."  *Id.* at 448.  In *Heller v. Doe*, 509 U.S. 312; 113 S. Ct. 2637; 125 L. Ed. 2d 257

21   (1993), the Court held that it is constitutionally permissible to apply different standards

22   for commitment of mentally retarded as opposed to mentally ill persons.

23   Plaintiffs cannot show they are "similarly situated" with the initial queue of

24   competing collectives that meet the criteria of the Medical Marijuana Ordinance.  The

25   Ordinance limits first priority to apply to register under the Ordinance to those collectives

26   that registered with the City Clerk and provided the City with a variety of essential

27   identifying documents by November 13, 2007.  None of the plaintiffs have alleged their

28   compliance with these requirements.

1    Classification based upon registration is rationally related to the City's interests in

2    limiting the number of collectives, recognizing priority, and providing notice.  See, e.g.,

3    *Bradley v. Public Utilities Com.*, 289 U.S. 92, 97; 53 S. Ct. 577; 77 L. Ed. 1053

4    (1933)(Court upheld a classification resulting in the denial of a permit to operate as a

5    common carrier over a congested route based upon the congested condition of the

6    highway, further rejecting plaintiff's equal protection claim based upon discrimination in

7    favor of common carriers previously certificated.);  *Durham v. City of Los Angeles*, 91

8    Cal.App.3d 567, 572-575 (1979)(court upheld a classification that exempted railroads

9    from liability from damages caused to those persons attempting to board a moving

10   locomotive without authority from the operator, on the grounds the railroad can more

11   easily monitor trains at rest than those which are moving.);  *Los Angeles Free Press, Inc.*

12   *v. City of Los Angeles*, 9 Cal. App. 3d 448, 456 (1970)(court upheld a classification

13   granting priority access to cross police lines to crime and disaster scenes to members of

14   the press who regularly reported police and fire news, as rationally related to the city's

15   interests in allowing the public to gain information about crimes and disasters without

16   jeopardizing public order and safety in the process).

17    The classification here, based upon earlier acts of compliance and registration,

18   serves these same purposes.  It provides priority to those who performed in good faith by

19   registering with the City; given that the City's explosion of unregulated dispensaries

20   created law enforcement and community chaos, the value to the City of limiting the first

21   round of registration under the Ordinance to those who demonstrated a willingness to be

22   regulated is immense.  This yardstick, limited to those collectives who provided timely

23   and substantial identification to the City and excluding rogues who refused to be

24   similarly governed, will provide a rational and reasonable mechanism for the City to

25   allow medical marijuana to be supplied by collectives to qualified City residents

26   consistent with public safety.

27    Moreover, proximity in time is a proper basis upon which to distinguish between

28   classes, as a matter of law.  *City of New Orleans v. Dukes*, 427 U.S. 297; 96 S. Ct. 2513;

49 L. Ed. 2d 511 (1976) (Constitutionally permissible to restrict food cart vendors in historic areas to those who held licenses continually for eight years or more.); *Int'l Action Ctr. v. City of New York*, 587 F.3d 521 (2nd Cir. 2009)(Constitutionally permissible to prohibit all new parades along Fifth Avenue in New York while still allowing prior existing parades to continue.); *Burns v. Des Peres*, 534 F.2d 103, 108-109 (8th Cir. 1976)(Denying equal protection challenge to the city's rejection of plaintiff's proposed subdivision based upon the court's conclusion that the lots to which plaintiff compared its lots were, *inter alia*, developed earlier in time.); *see also*, *e.g.*, *Renton*, 475 U.S. at 46-49; and *City of National City v. Wiener*, 3 Cal. 4th 832 (1992) (Upholding restrictions based upon location.)

Proximity in time is a proper basis upon which to distinguish between classes, even notwithstanding that the cutoff date is prior to the date the ordinance is adopted. Thus, in *Dukes*, the challenged ordinance amendment was passed on August 31, 1972, yet the grandfather clause allowed registrants who operated for periods prior to January 1, 1972 to remain in existence. Similarly, *Clay Lacy Aviation v. City of L.A.*, 2001 U.S. Dist. LEXIS 24492 (C.D. Cal. June 14, 2001), cites *Dukes* in rejecting an equal protection challenge to a grandfather clause which exempted aircraft which had been parked at an airport for 90 days prior to December 31, 1999, from a new noise regulation passed on April 18, 2000.

The City may take a step-by-step approach to regulating dispensaries by eliminating more recent dispensaries in order to meet its stated legislative goal of reducing the overall number of dispensaries. The *Dukes* court approved this step-by-step approach: "But rather than proceeding by the immediate and absolute abolition of all pushcart food vendors, the city could rationally choose initially to eliminate vendors of more recent vintage. This gradual approach to the problem is not constitutionally impermissible." *Dukes* at 305.

The City may rationally decide that a prior registration cutoff date will allow what the City sees as a reasonable number of dispensaries to remain open. That more recent

1   dispensaries are forced to close does not render the City's cutoff date irrational. *See also*

2   *Wawa, Inc. v. New Castle County*, 391 F. Supp. 2d 291 (D. Del. 2005)(Upholding a

3   water-supply-protection regulation despite the fact that, because of a grandfather clause,

4   it did not eliminate all dangerous underground petroleum storage tanks, stating that the

5   county has "acted rationally to reduce the danger to the water supply, even if it has not

6   immediately eliminated every danger.")

7   Plaintiffs grab at the straw that the City's rational classification system has its roots

8   in earlier registrations under an Interim Control Ordinance ("ICO") that was, two years

9   later, found to be procedurally defective. The subsequent invalidity of the ICO does not

10   undermine the City's ability to rely upon the earlier registration and proximity in time as

11   proper bases to distinguish between marijuana dispensaries. Absent a suspect class, a

12   violation of state law does not rise to the level of an equal protection violation where

13   persons are not otherwise equally situated. See, e.g., *Del Oro Hills v. City of Oceanside*,

14   31 Cal.App.4th 1060,1081-82 (1995)(Court denied plaintiff's equal protection claim

15   alleging unequal application, as between itself and its competitor, of a growth control

16   ordinance ultimately held invalid in conflict with the Government Code, on the grounds

17   the development agreement the city had with the competitor provided a rational basis to

18   distinguish between the two developers.); *Stubblefield Construction Co. v. City of San*

19   *Bernardino*, 32 Cal.App.4th 687, 709-10 (1995)("Even where state officials have

20   allegedly violated state law or administrative procedures, such violations do not

21   ordinarily rise to the level of a constitutional deprivation.")

22   Plaintiffs' allegations that the City purportedly allowed a few dispensaries to

23   correct deficiencies in their registration materials shortly after they timely registered is

24   not relevant. Those alleged late registrations have been rejected by the City. More to the

25   point, Plaintiffs have not contended that they themselves timely registered and proceeded

26   to comply with all requirements of the City's registration scheme.

27   Classifications based upon priority of registration, notice, and proximity in time are

28   routinely upheld. See, e.g., *Martinet v. Dep't of Fish & Game*, 203 Cal. App. 3d 791

16

1  (1988)(court upheld a regulation limiting shark and swordfish permits to prior permittees

2  as rationally related to the State's legitimate interest to protect against over fishing);

3  *Bradley v. Public Utilities Com.*, 289 U.S. 92, 97; 53 S. Ct. 577; 77 L. Ed. 1053 (1933);

4  *City of New Orleans v. Dukes*, 427 U.S. 297; 96 S. Ct. 2513; 49 L. Ed. 2d 511 (1976).

5       The Ordinance is rationally related to the City's legitimate, substantial, and

6  undisputed goal of reducing the number and regulating the location of marijuana

7  collectives.  The City's legislative classification properly and fairly recognizes priority

8  for certain collectives on the condition that they honor all applicable laws, that they

9  earlier demonstrated a willingness to be regulated, and that they timely disclosed the

10  essential particulars of their collective to the City Clerk.  The classification promotes

11  public welfare by affirming the importance to the City of its ability to monitor public

12  nuisance activity.  At the same time, it informs the public in general, and individuals with

13  legitimate needs for medical marijuana in particular, about the locations of the

14  collectives.

15       For these reasons, the Ordinance is rationally related to the legitimate interest of

16  the City in regulating the number and location of marijuana collectives and there is no

17  equal protection violation.

18        **2.  Plaintiffs' due process and vested rights claims fail to state a claim for**

19          **relief.**

20       To state a claim for due process violation, Plaintiffs must allege, as a threshold

21  matter, deprivation of a constitutionally protected property interest.  *Gunkel v. City of*

22  *Emporia*, 835 F.2d 1302, 1305 (10th Cir. 1987)(Revocation of building permit issued in

23  violation of the local zoning laws "without notice or hearing does not amount to a harm

24  for which section 1983 provides a remedy.")

25       Plaintiffs allege, as a protected property interest, vested rights to operate marijuana

26  collectives.  However, no vested right exists absent both all land use approvals by the

27  City that induced the applicant's good faith reliance and compliance with all laws and

28  regulations.  *See Avco Community Developers v. South Coast Regional Com.*, 17 Cal. 3d

785, 793 (1976)[3](vested rights requires substantial construction in good faith reliance on validly issued building permits); *City of Corona v. Naulls*, 166 Cal.App.4th 418 (2008)(court upheld a preliminary injunction against defendant from continuing to operate the medical marijuana dispensary as a non-permitted, non-conforming use, where the defendant opened the dispensary in violation of the City of Corona's land use code, which did not provide for marijuana dispensary as an enumerated use, and without following the city's administrative procedures for obtaining approval of such use.  The court concluded that the defendant's failure to comply with the city's procedural requirements before operating the dispensary created a nuisance *per se* pursuant justifying the preliminary injunction.); *City of Claremont v. Kruse*, 177 Cal.App.4th 1153, 1179 (2009)(court affirmed a permanent injunction against the defendant's operation of a marijuana dispensary where the defendant opened in violation of the City of Claremont's land use code which did not provide for marijuana dispensary as an enumerated use, and without obtaining the required city approval.  "[D]efendants had no 'vested right,' their operation of CANNABIS was not lawful, and they did not challenge any of the City's actions in a mandamus proceeding.").

Because only land uses enumerated in its zoning code are permitted in the City, Plaintiffs were required to obtain a variance or the enumeration of their marijuana use. Yet, Plaintiffs do not allege they ever applied for, received, or relied upon any City land use authorization to operate a marijuana collective.  Furthermore, Plaintiffs fail to allege (and cannot allege) that they complied with all City laws and regulations.

Plaintiffs' allegations that they expended time and money in furtherance of their business ventures do not create a vested right.  (Complaint p. 18, ¶ 51, lines 22-26.) Substantial work and investment alone, without governmental approval, do not create a vested right. *Avco, supra*; *Pettit v. City of Fresno*, 34 Cal.App.3d 813, 819 (1973)(A

_____

[3]  Superseded on other grounds in *Santa Margarita Area Residents Together v. San Luis Obispo County Bd. of Supervisors*, 84 Cal. App. 4th 221, 229 (2000).

1   permittee does not acquire a vested right under an invalid permit even though

2   expenditures have been made in good faith.); *Consaul v. City of San Diego*, 6

3   Cal.App.4th 1781, 1790, 1798 (1992)(No vested right existed in a multi-unit residential

4   project based upon the partial allocation by the city of units under an interim

5   development ordinance upon the ground the interim development ordinance allocation

6   did not represent the final step in the review process.)

7        Plaintiffs' reliance upon Tax Registration Certificates does not give rise to a vested

8   right to operate a medical marijuana collective.  (Complaint p. 18, ¶ 51, lines 22-26.) ;

9   pg. 22, ¶ 70, lines 4-11.)  The Tax Registration ordinance, on its face, states it does not

10  provide any right to operate any business.  ("RJN"), Exh. M.)  LAMC § 21.01 (No

11  registration certificate or permit issued "shall be construed as authorizing the conduct or

12  continuance of any illegal business or of a legal business in an illegal manner.")

13  ("RJN"), Exh. M.)  Consistent with the limited purpose of raising revenue, LAMC §

14  21.08 requires that each tax registration certificate state that it is not a permit and that it

15  does not authorize any unlawful business.  Plaintiffs' reliance upon the certificates is

16  unreasonable and does not give rise to a vested right, as a matter of law.  ("RJN"), Exh.

17  M.) *McCarthy v. California Tahoe Regional Planning Agency*, 129 Cal.App.3d 222,

18  232-33 (1982); *Consaul*, 6 Cal.App.4th at 1798  (No vested right exists absent final

19  approval.).

20       Similarly, Plaintiffs' purported compliance with state law (a Seller's Permit from

21  the California State Board of Equalization) lacks merit for similar reasons.

22  **D.    Plaintiffs' 42 U.S.C. § 1983 claim fails as a matter of law.**

23       Plaintiff's third claim for civil rights damages is based upon violation of plaintiffs'

24  rights to due process and equal protection under the First, Fifth and Fourteenth

25  amendments.  It therefore fails for the same reasons as stated above, namely plaintiffs'

26  failure to allege violation of a clearly established constitutional right.

27

28

1

## IV.   CONCLUSION

2

Based on the foregoing, the City respectfully requests that this Court dismiss

3

Plaintiffs' action in its entirety.

4

5

Dated:  June 25, 2010

**CARMEN A. TRUTANICH**, City Attorney
**KENNETH FONG**, Deputy City Attorney
**COLLEEN M. COURTNEY**, Deputy City Attorney

6

7

By: _____

8

COLLEEN M. COURTNEY
Deputy City Attorney

9

Attorney for Defendant
**CITY OF LOS ANGELES**

10

M:\Real Prop_Env_Land Use\Land Use\Colleen Courtney\Active Cases\

11

West Valley Caregivers - Federal aciton\Revised Citys Motion to Dismiss (Final 06.25.10).doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28