1 | **CARMEN A. TRUTANICH,** City Attorney (SBN (86629x)
**KENNETH FONG**, Deputy City Attorney (SBN 140609)
2 | **COLLEEN M. COURTNEY**, Deputy City Attorney (SBN 134187)
701 City Hall East
3 | 200 North Main Street
Los Angeles, California 90012
4 | Telephone No.: 213.978.8244
Fax Number:    213.978.8214
5 | E-mail:  Colleen.Courtney@lacity.org

6 | Attorney for Defendant
CITY OF LOS ANGELES

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | (1) WEST VALLEY CAREGIVERS, )   Case No.: CV10-4150 SJO (AJWx)
an Unincorporated Not-For Profit )
12 | Association; (2) ROAYL HERB )
MERCHANG, a California Non-Profit )   Honorable S. James Otero
13 | Mutual Benefit Corporation; (3) )
HERBAL HEALING'S HERBAL )
14 | HEALING CENTER, a California Not- )   **DEFENDANT CITY OF LOS**
For Profit Limited Liability Company; )   **ANGELES' REQUEST FOR**
15 | (4) HOLLYWOODS )   **JUDICIAL NOTICE IN SUPPORT**
COMPASSIONATE CAREGIVERS, a )   **OF CITY'S MOTION TO DISMISS**
16 | California Non-Profit Mutual Benefit )   **COMPLAINT**
Corporation; (5) LOS ANGELES )
17 | MEDICAL COLLECTIVE, a California )   [Local Rule 7.1-1]
Non-Profit Mutual Benefit Corporation; )
18 | (6) INFINITY PHILANTHROPY )   [No Hearing Set]
GLOBAL DBA ALLEVIATIONS, a )
19 | California Non-Profit Mutual Benefit )   DATE:  July 19, 2010
Corporation; (7) PACOIMA )   TIME:   10:00 a.m.
20 | RECOVERY COLLECTIVE INC, a )   COURTROOM: 1(Spring Street)
California Non-Profit Mutual Benefit )
21 | Corporation; (8) HERBAL LOVE )
CAREGIVERS ON THE )
22 | BOULEVARD, a California Non-Profit )
Mutual Benefit Corporation;; (9) CAFE )
23 | 420, a California Non-Profit Mutual )
Benefit Corporation; (10) HELPING )
24 | HINT CAREGIVERS, a California )
Non-Profit Mutual Benefit Corporation; )
25 | (11) TRADITIONAL HERBAL )
CENTER, INC COLLECTIVE )
26 | CAREGIVERS, a California Non-Profit )
Mutual Benefit Corporation; (12) )
27 |
T.L.P.C., a California Non-Profit )
28 | Mutual Benefit Corporation; (13) )

1

1  LAHC 3 COLLECTIVE, a California   )
   Non-Profit Mutual Benefit Corporation;  )
2  (14) UNIVERSAL CAREGIVERS   )
   INC., a California Mutual Benefit   )
3  Corporation;   )
                                          )
4              Plaintiffs,                )
                                          )
5         vs.                             )
                                          )
6  CITY OF LOS ANGELES, a           )
   government entity; DOES 1 through 10, )
7  inclusive,                            )
                                          )
8              Defendants.               )
                                          )
9                                         )

10 _____

11

12       Defendant, City of Los Angeles ("City"), respectfully requests the Court take

13 judicial notice of the following Ordinances, Municipal Codes, City Charter, legislative

14 history, official records of the City, court records, certificates, and facts, in support of

15 the City's Motion to Dismiss the Complaint in this action.

16       The items subject to judicial notice are attached as lettered Exhibits to City's

17 Request for Judicial Notice in Support of Opposition ("RJN") as indicated in the

18 following Exhibit Index:

19

20                         **EXHIBIT INDEX**

21                                                          **Exhibit Letter**

22 **VOLUME I**

23 Los Angeles Ordinances

24       Interim Control Ordinance 179027 and associated legislative history. . . . . . . A

25       Interim Control Ordinance 180749 and associated legislative history . . . . . . . B

26       Permanent Ordinance 181069    and associated legislative history. . . . . . . . . . C

27       Permanent Ordinance 181157 and associated legislative history. . . . . . . . . . . D

28

Los Angeles Municipal Code

Definitions (Zones; Open Space) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .E

    § 12.04 (Zones – Districts – Symbols)

    §12.04.05B (OS Open Space Zone)

    §12.04.09B (PF Public Facilities Zone)

Agriculture A-Zones     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . F

    § 12.05A (A1 Agricultural Zone)

    §12.06A (A2 Agricultural Zone)

Residential – Single Family R-Zones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .G

    §12.07A (RA Suburban Zone)

    §12.07.01A (RE Residential Zone)

    §12.07.1A (RS Suburban Zone)

    §12.08A (R1 One-Family Zone)

    §12.08.1B (RU Residential Urban Zone)

    §12.08.3B (RZ Residential Zero Side Yard Zone)

    §12.08.5B (RW1 One-Family Residential Waterways Zone)

Residential Multi-Family R Zones     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .H

    §12.09A (R2 Two-Family Zone)

    §12.09.1A(RD Restricted Density Multiple Dwelling Zone)

    §12.09.3B (RMP Mobile Home Park Zone)

    §12.09.5B (RW2 Two-Family Residential Waterways Zone)

    §12.10A (R3 Multiple Dwelling Zone)

    §12.10.5A (RAS3 Residential/Accessory Services Zone)

    §12.11A (R4 Multiple Dwelling Zone)

    §12.11.5A (RAS4 Residential/Accessory Services Zone)

    §12.12A (R5 Multiple Dwelling Zone)

Parking P Zones. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

    §12.12.1A (P Automobile Parking Zone)

    §12.12.1.5A (PB Parking Building Zone)

Commercial C Zones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J

    §12.12.2A (CR Limited Commercial Zone)

    §12.13A (C1 Limited Commercial Zone)

    §12.13.5A (C1.5 Limited Commercial Zone)

    §12.14A (C2 Commercial Zone); §12.16A (C4 Commercial Zone)

    §12.17A (C5 Commercial Zone)

    §12.17.1A (CM Commercial Manufacturing Zone)

Industrial M Zones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . K

    §12.17.5B (MR1 Restricted Industrial Zone)

    §12.17.6A (M1 Limited Industrial Zone)

    §12.18A (MR2 Restricted Light Industrial Zone)

    §12.19A (M2 Light Industrial Zone)

    §12.20A (M3 Heavy Industrial Zone)

    §12.20.1B (SL Ocean-Submerged Land Zone)

Zoning Code Administration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L

    § 12.21A1(a) (Permits and Licenses)

    § 12.21A2 (Other Use Determination by Zoning Administrator)

    § 12.23 (Non-Conforming Building and Uses)

    § 12.26K (Appeal of Enforcement / Administration Determination)

    § 12.27 (Variances)

Business Tax Registration Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . .M

    § 21.01 (Unlawful Business Not Authorized)

    § 21.08 (Business Tax Registration Certificate-Form)

Tobacco Retailer's Permit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..N

    § 46.90 (Definitions)

    § 46.91 (Retailer's Permit Required)

    § 46.92 (Application Procedure)

    § 46.93 (Issuance of Permit)

    § 46.94 (Display of Permit)

    § 46.95 (Fees for Permit)

    § 46.96 (Renewal of Permit; Delinquency)

    § 46.97 (Permits Not Transferable)

    § 46.98 (Administrative Violations)

    § 46.99 (Administrative Penalties)

    § 46.100 (Right to Administrative Review and Procedures)

    § 46.101 (Severability)

Building Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . O

    § 91.103.1 (Violations)

Los Angeles City Charter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .P

    § 250 (Procedure for Adoption of Ordinances)

    § 251 (Publication or Posting or Ordinances)

    § 252 (Effective Date of Ordinances, Orders and Resolutions)

**POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This Request for Judicial Notice is filed in support of City's Motion to Dismiss the Complaint.

## II.   THE CITY'S ORDINANCES, MUNICIPAL CODES, AND CHARTER IN EXHIBITS A-P ARE SUBJECT TO JUDICIAL NOTICE.

The Ordinances, Municipal Code and Charter sections referenced in Exhibits A-P are subject to judicial notice as matters that are not reasonably subject to dispute because they are either : 1) generally known within the territorial jurisdiction of the Court; or 2) are capable of accurate and ready determination through accurate sources.  Fed. R. Evid. 201(b) and (d); Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495 (10th Cir. 1997) (court took judicial notice of municipal ordinance related to issue at core of case, distinguished on other grounds); Demos v. City of Indianapolis, 302 F.3d 698 (7th Cir. 2002) (judicial notice of municipal code provision and state statute as matters of "common knowledge"). True and correct copies of the referenced local laws are attached to the City's RJN as Exhibits A-P. (Declaration of Colleen Courtney).

## III.   THE LEGISLATIVE HISTORY, DATES OF ADOPTION, AND EFFECTIVE DATES OF THE ORDINANCES ATTACHED ARE SUBJECT TO JUDICIAL NOTICE.

The legislative history reflecting adoption and effective dates of City's Ordinances, contained in the legislative history attached at Exhibits A-C, are subject to mandatory judicial notice as facts and propositions capable of ready and accurate determination through an inquiry into official City of Los Angeles records.  Fed. R. Evid. 201(b) and (d); United States v. Cooper, 375 F.3d 1041, 1047 (10th Cir. 2004) (judicial notice of certified copies of Federal Deposit Insurance Corporation certificates as business records under Fed. R. Evid 803(b), convictions affirmed, case distinguished on other grounds); United States v. 14.02 Acres of Land More or Less, 547 F.3d 943, 955 (9th Cir. 2008) (trial court took judicial notice of a Department of Energy Study as a

1  public record, summary judgment affirmed). True and correct copies of the referenced

2  items are attached to the City's RJN as Exhibits A-C. (Declaration of Colleen

3  Courtney).

4  IV.     **CONCLUSION**

5          Judicial notice of the requested items is appropriate based on the above facts and

6  law.

7
   Date:  June 24, 2010                    **CARMEN A. TRUTANICH**, City Attorney
8                                          **KENNETH FONG**, Deputy City Attorney
                                           **COLLEEN M. COURTNEY**, Deputy City Attorney
9

10                                         By: _____
                                               **COLLEEN M. COURTNEY**
11
                                           Attorneys for Defendant
12                                         CITY OF LOS ANGELES

13  M:\Real Prop_Env_Land Use\Land Use\Colleen Courtney\Active Cases\
    West Valley Caregivers - Federal aciton\RJN.mot.dismiss.doc
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF COLLEEN COURTNEY

I, COLLEEN COURTNEY, declare that I have personal knowledge of the following facts, and that if called as a witness I could, and would testify as follows:

1.   I am an attorney licensed in the State of California and am counsel of record for the City of Los Angeles (hereafter "City") in the above referenced action.

2.   A true and correct copy of City of Los Angeles Municipal Ordinance ("Ordinance") 179027, and associated legislative history reflecting passage by the Los Angeles City Council ("Council") on August 1, 2007, with an effective date of September 14, 2007, is attached to City's Request for Judicial Notice ("RJN") as it appears in the online Council File No. 05-0872-S1, as Exhibit A.

3.   A true and correct copy of Ordinance 180749, and associated legislative history reflecting passage by Council on June 19, 2009, with an effective date of June 24, 2009, is attached to City's RJN as it appears in the online Council File No. 09-0964, as Exhibit B.

4.   A true and correct copy of Ordinance 181069, and associated legislative history reflecting passage by Council on January 26, 2010, with an effective date of March 14, 2010, and an operative date coinciding with Ordinance 181157, is attached to City's RJN as it appears in the online City Council File No. 08-0923, as Exhibit C.

5.   A true and correct copy of Ordinance 181157, and associated legislative history reflecting passage by the Los Angeles City Council on April 23, 2010, with an effective date of June 7, 2010, is attached to City's RJN as it appears in the online Council File No. 08-0923-S5, as Exhibit D.

6.   True and correct copies of the Los Angeles Municipal Code are attached to the City's RJN as the following Exhibit numbers:                    Exhibit No.

Definitions (Zones; Open Space) . . . . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . .E

      § 12.04 (Zones – Districts – Symbols)

      §12.04.05B (OS Open Space Zone)

1        §12.04.09B (PF Public Facilities Zone)

2    Agriculture A-Zones   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . F

3        § 12.05A (A1 Agricultural Zone)

4        §12.06A (A2 Agricultural Zone)

5    Residential – Single Family R-Zones . . . . . . . . . . . . . . . . . . . . . . . . . . .G

6        §12.07A (RA Suburban Zone)

7        §12.07.01A (RE Residential Zone)

8        §12.07.1A (RS Suburban Zone

9        §12.08A (R1 One-Family Zone)

10       §12.08.1B (RU Residential Urban Zone)

11       §12.08.3B (RZ Residential Zero Side Yard Zone)

12       §12.08.5B (RW1 One-Family Residential Waterways Zone)

13    Residential Multi-Family R Zones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H

14       §12.09A (R2 Two-Family Zone)

15       §12.09.1A(RD Restricted Density Multiple Dwelling Zone)

16       §12.09.3B (RMP Mobile Home Park Zone)

17       §12.09.5B (RW2 Two-Family Residential Waterways Zone)

18       §12.10A (R3 Multiple Dwelling Zone)

19       §12.10.5A (RAS3 Residential/Accessory Services Zone)

20       §12.11A (R4 Multiple Dwelling Zone)

21       §12.11.5A (RAS4 Residential/Accessory Services Zone)

22       §12.12A (R5 Multiple Dwelling Zone)

23    Parking P Zones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .I

24       §12.12.1A (P Automobile Parking Zone)

25       §12.12.1.5A (PB Parking Building Zone)

26    Commercial C Zones   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .J

27       §12.12.2A (CR Limited Commercial Zone)

28       §12.13A (C1 Limited Commercial Zone)

§12.13.5A (C1.5 Limited Commercial Zone)

§12.14A (C2 Commercial Zone); §12.16A (C4 Commercial Zone)

§12.17A (C5 Commercial Zone)

§12.17.1A (CM Commercial Manufacturing Zone)

Industrial M Zones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . K

§12.17.5B (MR1 Restricted Industrial Zone)

§12.17.6A (M1 Limited Industrial Zone)

§12.18A (MR2 Restricted Light Industrial Zone)

§12.19A (M2 Light Industrial Zone)

§12.20A (M3 Heavy Industrial Zone)

§12.20.1B (SL Ocean-Submerged Land Zone)

Zoning Code Administration. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  L

§ 12.21A1(a) (Permits and Licenses)

§ 12.21A2 (Other Use Determination by Zoning Administrator)

§ 12.23 (Non-Conforming Building and Uses)

§ 12.26K (Appeal of Enforcement / Administration Determination)

§ 12.27 (Variances)

Business Tax Registration Certificate. . . . . . . . . . . . . . . . . . . . . . . . .M

§ 21.01 (Unlawful Business Not Authorized)

§ 21.08 (Business Tax Registration Certificate-Form)

Tobacco Retailer's Permit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . N

§ 46.90 (Definitions)

§ 46.91 (Retailer's Permit Required)

§ 46.92 (Application Procedure)

§ 46.93 (Issuance of Permit)

§ 46.94 (Display of Permit)

§ 46.95 (Fees for Permit)

§ 46.96 (Renewal of Permit; Delinquency)

1      § 46.97 (Permits Not Transferable)

2      § 46.98 (Administrative Violations)

3      § 46.99 (Administrative Penalties)

4      § 46.100 (Right to Administrative Review and Procedures)

5      § 46.101 (Severability)

6    Building Administration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . O

7      § 91.103.1 (Violations)

8      7.      True and correct copies of the Los Angeles City Charter sections 250, 251,

9 and 252 are attached to the City's RJN as Exhibit P.

10      I declare under penalty of perjury under the laws of the State of California and the

11 United States of America that the foregoing is true and correct.  Executed June 24, 2010

12 at Los Angeles, California.

14                       _____

15                       COLLEEN COURTNEY

**EXHIBIT A**

# ORDINANCE NO. 179027

An Interim Control Ordinance temporarily prohibiting the opening of any new Medical Marijuana Dispensaries.

**WHEREAS,** in 1996, California voters approved Proposition 215, (The Compassionate Use Act); which legalized the use of marijuana for medical purposes and allows persons to grow or possess marijuana based on the recommendation of a licensed physician. The State enacted supplemental medical marijuana legislation, Senate Bill 420, which was intended to clarify the application and scope of the Compassionate Use Act and enhance the access of qualified patients and primary caregivers to medical marijuana through collective, cooperative cultivation projects;

**WHEREAS,** Proposition 215 (The Compassionate Use Act) and Senate Bill 420 do not legalize dispensaries that are often "for profit" and purport to operate under the definition of a "primary caregiver." The proliferation of dispensaries followed the passage of Proposition 215 in 1996. The spirit and intent of the Compassionate Use Act has been exploited and abused for both profit and recreational drug abuse by many of the medical marijuana dispensaries in the City of Los Angeles. Absent stringent regulations and enforcement actions, these dispensaries have flourished throughout the City;

**WHEREAS,** State law does not specifically address Medical Marijuana Dispensaries. The lack of regulations or guidelines has created confusion and hampered the ability of law enforcement to prosecute Medical Marijuana Dispensary operators that have been linked to criminal activity;

**WHEREAS,** Medical Marijuana Dispensaries continue to proliferate, so do citizen complaints and the risks these dispensaries pose to our communities. Across the state, law enforcement agencies have identified marijuana dispensaries as hubs for illegal activity that abuse medical marijuana laws and operate devoid of proper regulation;

**WHEREAS,** Medical Marijuana Dispensaries have been known to operate and advertise in and or close to schools, unlawfully sell marijuana for profit that is later resold in communities, lack the medical expertise to be able to properly dispense marijuana, and routinely sell marijuana to individuals without any legal medical documentation;

**WHEREAS,** the City of Los Angeles should evaluate the impacts of Medical Marijuana Dispensaries, on its residents, neighborhoods, and legally operated businesses;

**WHEREAS,** this Interim Control Ordinance is designed to prevent new Medical Marijuana Dispensaries, while an inter-departmental task force, led by the Planning Department, crafts an ordinance to regulate medical marijuana dispensaries and establish viable regulations; and

1

WHEREAS, this Interim Control Ordinance gives the City the time it needs to undertake the critically important task of developing a comprehensive strategy for regulating Medical Marijuana Dispensaries, thus ensuring that this important legislative opportunity is fully examined in depth while not permitting new Medical Marijuana Dispensaries to be established throughout the City.

NOW, THEREFORE,

## THE PEOPLE OF THE CITY OF LOS ANGELES
## DO ORDAIN AS FOLLOWS

**Section 1. DEFINITION.** The following term, whenever used in this ordinance, shall be construed as defined in this section. Words and phrases not defined here shall be construed as defined in Los Angeles Municipal Code (LAMC) Section 12.03 if defined there.

**Medical Marijuana Dispensary** for the purposes of this interim control ordinance means any use, facility or location, including but not limited to a retail store, office building, or structure that distributes, transmits, gives, dispenses, facilitates or otherwise provides marijuana in any manner, in accordance with State law, in particular, California Health and Safety Code Sections 11362.5 through 11362.83, inclusive.

**Sec. 2. PROHIBITION.** Notwithstanding any provisions of the LAMC to the contrary, for a period of one year from the effective date of this ordinance or until a permanent ordinance is adopted, which establishes permanent citywide regulations regarding Medical Marijuana Dispensaries, whichever occurs first:

A. No person or entity shall establish a Medical Marijuana Dispensary.

B. No person or entity shall operate a Medical Marijuana Dispensary.

**Sec. 3. EXCEPTION.** The prohibitions specified in Section 2 of this ordinance shall not apply to any Medical Marijuana Dispensary established before the effective date of this ordinance and operated in accordance with State law, if the owner or operator of the Medical Marijuana Dispensary complies with the following requirements:

A. File the form, designated by the Office of the City Clerk, and the following documentation with the Office of the City Clerk within 60 days of the adoption of the Interim Control Ordinance: City of Los Angeles Tax Registration Certificate, State Board of Equalization seller's permit, property lease, business insurance, and dispensary membership forms and, if needed, Los Angeles County Health Department permit. If the 60th day falls on a Saturday, Sunday or holiday, the filing deadline will be extended to 5:00 pm on the next business day.

B. This exception only applies to a facility that otherwise meets all requirements of the LAMC and is open for business on the effective date of this ordinance.

**Sec. 4.  HARDSHIP EXEMPTIONS.**  The City Council, acting in its legislative capacity and by resolution, may grant an exemption from the provisions of this ordinance in cases of hardship duly established to the satisfaction of the City Council. An application for a hardship exemption shall be obtained from and filed with the City Clerk.

**Sec. 5.  EXTENSION OF REGULATIONS.**  The City Council may, by resolution, extend the provisions of this ordinance for two additional periods, not to exceed 180-days each, so long as the City Council makes the following finding:  That appropriate City agencies and officials are exercising due diligence to assure that the subject ordinance revisions are being expeditiously processed.

**Sec. 6.  SEVERABILITY.**  If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions of this ordinance, which can be implemented without the invalid provisions and, to this end, the provisions of this ordinance are declared to be severable.

**Sec. 7.  APPLICABILITY OF THE ZONE CODE.**  The regulations of this ordinance are in addition to those set forth in the planning and zoning provisions of Chapter 1 of the LAMC and any other ordinances adopted by the City Council and do not contain any rights otherwise granted under the provisions and procedures contained in the LAMC or other ordinance.

**Sec. 8.**  The City Council finds and declares that this ordinance is required for the immediate preservation of the public peace, health and safety for the following reasons. This ordinance will prohibit new Medical Marijuana Dispensaries and prevent unregulated proliferation, pending adoption of a permanent ordinance.  The recommendations of a permanent ordinance reflecting the spirit and intent of the Compassionate Use Act could be undermined if new dispensaries are allowed.  The number of dispensaries operating within the City is escalating.  The Los Angeles Police Department has received complaints from neighbors, business owners, and concerned citizens regarding the negative impacts of dispensaries, including flyers, leaflets and stickers advertising dispensaries being placed on school grounds; smoking marijuana outdoors within 1,000 feet from schools; operating near sensitive uses; and constant activity around dispensaries at all hours.  Citizens have raised concerns that children will have access to marijuana for recreational use, and that there will be an increase in crime particularly in areas in close proximity to residences, schools, places of worship and other sensitive uses, as well as concerns regarding a lack of regulations for the hours of operation.  Without regulations for the location of a dispensary and hours of operation, the result has been the establishment of dispensaries in close proximity to sensitive uses operating at all hours.  This ordinance will prevent unregulated proliferation of new dispensaries and provide the City time to develop regulations relative to distances from sensitive uses, hours of operation, compatibility to surrounding uses, and other related land use issues.

**Sec. 9**  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of _____AUG 0 1 2007_____.

FRANK T. MARTINEZ, City Clerk

By _____
                                                           Deputy

AUG 1 0 2007

Approved _____

                                                           Mayor

Approved as to Form and Legality

ROCKARD J. DELGADILLO, City Attorney

By _Arletta Marie Brimsey_ /_S/_
        ARLETTA MARIA BRIMSEY
        Deputy City Attorney

Date _August 1, 2007_ _____

File No. CPC No. 2007-0280-ICO
        C.F. 05-0872-S1

M:\Real Prop_Env_Land Use\Land Use\Jeri Burge\med marijuana V3.doc

Pursuant to Charter Section 559, I approve this ordinance on behalf of the City Planning Commission and recommend that it be adopted . . . . . .

August 1, 2007

See attached report.

_A. Gail Goldberg_
S. Gail Goldberg
Director of Planning

4

# CITY OF LOS ANGELES
### CALIFORNIA



FRANK T. MARTINEZ
City Clerk

KAREN E. KALFAYAN
Executive Officer

When making inquiries
relative to this matter
refer to File No.

05-0872-S1

Office of the
**CITY CLERK**
Council and Public Services
Room 395, City Hall
Los Angeles, CA 90012
Council File Information - (213) 978-1043
General Information - (213) 978-1133
Fax: (213) 978-1040

CLAUDIA M. DUNN
Chief, Council and Public Services Division
www.cityclerk.lacity.org

ANTONIO R. VILLARAIGOSA
MAYOR

August 14, 2007

Office of the Mayor
All Councilmembers
City Attorney,
  Attn: Arletta Maria Brimsey
Chief Legislative Analyst
City Planning Department,
  Attn: Mark Lopez (w/copy of Ordinance)

Department of Building & Safety
  c/o Zoning Coordinator
Police Department
City Clerk,
  Attn: Frank Martinez
Planning and Land Use Management Committee Clerks,
  Attn: Barbara Greaves
  Attn: Shannon Hoppes

RE:    TEMPORARILY PROHIBITING THE OPENING OF ANY NEW MEDICAL MARIJUANA DISPENSARIES THROUGHOUT THE CITY

At the meeting of the Council held July 25, 2007, the following action was taken:

| | |
|---|---|
| Attached report adopted | X |
| Attached motion (-) adopted | |
| Mayor concurred | |
| To the Mayor FORTHWITH | X |
| Ordinance adopted | 08-01-07 |
| Ordinance number | 179027 |
| Publication date | 08-14-07 |
| Effective date | 09-14-07 |
| Mayor approved | 08-10-07 |
| Mayor failed to act - deemed approved | |
| Findings adopted | X |
| Exemption approved | X |

*Frank L. Martinez*

City Clerk
cr

20

TO THE COUNCIL OF THE
CITY OF LOS ANGELES                                                                    FILE NO. 05-0872-S1

Your                              **PLANNING AND LAND USE MANAGEMENT**                  Committee

**reports as follows:**

EXEMPTION, PLANNING AND LAND USE MANAGEMENT COMMITTEE REPORT and INTERIM CONTROL
ORDINANCE (ICO) relative to temporarily prohibiting the opening of any new Medical Marijuana Dispensaries
throughout the City.

Recommendations for Council action, as initiated by Motion (Zine - LaBonge), SUBJECT TO THE APPROVAL
OF THE MAYOR:

1.    FIND that this action is exempt from the California Environmental Quality Act, pursuant to Article II,
      Section 2, Subsection(m) of the City's Environmental Guidelines.

2.    ADOPT the July 16, 2007, FINDINGS of the Director of Planning as the FINDINGS of the Council.

3.    PRESENT and ADOPT the accompanying ICO temporarily prohibiting the opening of any new Medical
      Marijuana Dispensaries throughout the City for a period of one year from the effective date of this
      Ordinance or until a permanent Ordinance is adopted, which establishes permanent citywide regulations
      regarding Medical Marijuana Dispensaries, whichever occurs first. This ICO, by resolution of the Council,
      may be extended for two additional periods not to exceed 180 days.

                                                                                        CPC 2007-280 ICO

Fiscal Impact Statement: The City Planning Commission reports that there is a General Fund impact as
administrative costs resulting from implementation are not recovered through fees.

                                **12 VOTES REQUIRED FOR URGENCY CLAUSE**

Summary:

On May 22, 2007 (continued from May 15, 2007), the Planning and Land Use Management (PLUM) Committee
considered the City Planning Commission report and proposed Medical Marijuana Dispensary Interim Control
Ordinance (ICO) revised Appendix A, to temporarily prohibit the establishment of any new medical marijuana
dispensaries citywide.  The prohibition would remain in effect for a period of one year, with the possibility of two
six-month extensions, and include an Urgency Clause making it effective upon publication, pursuant to Motion
(Zine - LaBonge).

After careful consideration of the documents on file and of the testimony provided by Planning Department staff,
Council District Three staff (speaking on behalf of Councilmember Dennis P. Zine), the City Clerk, and the Los
Angeles Police Department (LAPD), the PLUM Committee requested the following:

      1.    that the City Attorney prepare a final draft Medical Marijuana Dispensary Interim Control Ordinance
            within six weeks and revise the language in Section 3.B. (revised Appendix A of the City Planning
            Commission draft Ordinance), as recommended by the City Clerk, to read as follows:

"File the designated form and documentation with the Office of the City Clerk within 60 days of the adoption of the Interim Control Ordinance. If the 60th day falls on a Saturday, Sunday, or holiday the filling deadline will be extended to 5:00 p.m. on the next business day;" and

2.   that the LAPD report back to PLUM Committee in four weeks with crime statistics in and around medical marijuana dispensaries.

At the June 26, 2007, PLUM Committee meeting, LAPD staff provided the PLUM Committee with a report relative to crime statistics at Medical Marijuana locations throughout the City, and by area.

On July 17, 2007, the City Attorney transmitted the final draft Ordinance to Council, with the July 16, 2007, Director of Planning's report and findings attached.

As noted in Sections 3 and 4 of the final draft ordinance prepared by the City Attorney, the provisions of the Ordinance do not apply to any Medical Marijuana Dispensary established before the effective date of the ordinance and operated in accordance with State law. The operator or owner of the established dispensaries, will be required to file the form designated by the Office of the City Clerk, and provide the following documentation within 60 days of the adoption of the ICO:

   a. City of Los Angeles Tax Registration Certificate
   b. State Board of Equalization seller's permit
   c. property lease, business insurance, and dispensary membership forms and, if needed
   d. Los Angeles County Health Department permit

In addition, the proposed Ordinance provides for hardship exemptions in that the Council, acting in its legislative capacity and by resolution, may grant an exemption from the provisions of this ordinance in cases of hardship duly established to the satisfaction of the Council. An application for a hardship exemption from the ICO, shall be obtained from and filed with the City Clerk.

The matter is hereby transmitted to the Council for its consideration.

Respectfully submitted,

PLANNING AND LAND USE MANAGEMENT COMMITTEE

| MEMBER | VOTE |
| --- | --- |
| REYES: | YES |
| HUIZAR: | YES |
| WEISS: | YES |

BG
7-19-07
Citywide
Attachment: Ordinance

#050872.1

REPT & FINDINGS
ADOPTED
JUL 2 5 2007

LOS ANGELES CITY COUNCIL
EXEMPT APPROVED
ORDINANCE OVER TO AUG 1 2007

ORD
ADOPTED
AUG 0 1 2007

LOS ANGELES CITY COUNCIL

TO THE MAYOR FORTHWITH

**EXHIBIT B**

ORDINANCE NO. ___180749___

An ordinance amending Ordinance No. 179027, commonly referred to as the Medical Marijuana Dispensaries Interim Control Ordinance.

THE PEOPLE OF THE CITY OF LOS ANGELES
DO ORDAIN AS FOLLOWS:

Section 1.  The first unnumbered paragraph of Section 2 of Ordinance No. 179027 is amended to read:

Notwithstanding any provisions of the LAMC to the contrary, for the period from the effective date of this ordinance until March 15, 2010, or until a permanent ordinance is adopted which establishes citywide regulations regarding Medical Marijuana Dispensaries, whichever occurs first:

Sec. 2.  Section 4 of Ordinance No. 179027 is deleted.

Sec. 3.  Section 5 of Ordinance No. 179027 is amended to read:

Sec. 5.  ENFORCEMENT.  The enforcement provisions set forth in LAMC Section 11.00 (l) and (m) shall apply to any violation of the provisions of this ordinance.

Sec. 4.  URGENCY CLAUSE.  The City Council finds and declares that this ordinance is required for the immediate preservation of the public peace, health and safety for the following reasons.  Ordinance No. 179027 prohibited the establishment of new Medical Marijuana Dispensaries unless a hardship exemption was adopted by the City Council.  During the pendency of Ordinance No. 179027 several hundred Medical Marijuana Dispensaries filed requests for hardship exemptions with the City Clerk's Office.  The effect of all of these requests for hardship exemption is to encourage the unregulated proliferation of Medical Marijuana Dispensaries.  The recommendations of a permanent ordinance reflecting the spirit and intent of the Compassionate Use Act could be undermined if new dispensaries are allowed.  The number of dispensaries operating within the City is escalating.  The Los Angeles Police Department has received complaints from neighbors, business owners, and concerned citizens regarding the negative impacts of dispensaries, including flyers, leaflets and stickers advertising dispensaries being placed on school grounds; smoking marijuana outdoors within 1,000 feet from schools; operating near sensitive uses; and constant activity around dispensaries at all hours.  Citizens have raised concerns that children will have access to marijuana for recreational use, and that there will be an increase in crime particularly in areas in close proximity to residences, schools, places of worship and other sensitive uses, as well as concerns regarding a lack of regulations for the hours of operation.  Without regulations for the location of a dispensary and hours of operation, the result has been the establishment of dispensaries in close proximity to sensitive uses operating at all hours.  This ordinance will delete the hardship exemption provision

1

of Ordinance No. 179027 in order to prevent unregulated proliferation of new dispensaries and provide the City time to develop regulations relative to distances from sensitive uses, hours of operation, compatibility to surrounding uses, and other related land use issues.

2

Sec. 5.  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, by a vote of **not less than three-fourths** of all of its members, at its meeting of    **JUN 1 9 2009**

JUNE LAGMAY, City Clerk

By _____
                                          Deputy

Approved ____JUN 2 2 2009_____

_____
                                          Mayor

Approved as to Form and Legality

ROCKARD J. DELGADILLO, City Attorney

By _____
        JERI L. BURGE
        Assistant City Attorney

Date __June 15, 2009_____

Pursuant to Charter Section 559, I disapprove this ordinance on behalf of the City Planning Commission and recommend that it not be adopted . . . . . .

June 15, 2009

See attached report.

_____ For SGG
        S. Gail Goldberg
        Director of Planning

File No. CF No. 09-0964 _____

M:\Real Prop_Env_Land Use\Land Use\Jeri Burge\Ordinances\med marijuana ext.doc

# CITY OF LOS ANGELES
### CALIFORNIA



**JUNE LAGMAY**
City Clerk

**KAREN E. KALFAYAN**
Executive Officer

Office of the
**CITY CLERK**

**Council and Public Services**
Room 395, City Hall
Los Angeles, CA 90012
General Information - (213) 978-1133
Fax: (213) 978-1040

**KONRAD CARTER**
Acting Chief, Council and Public Services
Division

www.cityclerk.lacity.org

**ANTONIO R. VILLARAIGOSA**
MAYOR

June 22, 2009

To All Interested Parties:

The City Council adopted the action(s), as attached, under Council file No.

09-0964, at its meeting held  JUNE 19, 2009 .

City Clerk
VCW

An Equal Employment Opportunity - Affirmative Action Employer

-24-

TIME LIMIT FILES
ORDINANCES

**FORTHWITH**

Mayor's Time Stamp
OFFICE of the City Clerk
RECEIVED
2009 JUN 19  PM 4:02
CITY OF LOS ANGELES

City Clerk's Time Stamp
RECEIVED
CITY CLERK'S OFFICE
2009 JUN 19  PM 3:53
CITY CLERK
BY_____
                 DEPUTY

COUNCIL FILE NUMBER ____09-0964____        COUNCIL DISTRICT_____

COUNCIL APPROVAL DATE ____JUNE 19, 2009____   LAST DAY FOR MAYOR TO ACT ___JUN 29 2009___

ORDINANCE TYPE: ____ Ord of Intent ____ Zoning ____ Personnel _X_ General

____ Improvement ____ LAMC ____ LAAC ____ CU or Var Appeals - CPC No. _____

SUBJECT MATTER:  THE MEDICAL MARIJUANA DISPENSARIES INTERIM CONTROL ORDINANCE

|  | APPROVED | DISAPPROVED |
|---|---|---|
| PLANNING COMMISSION | ____ | X |
| DIRECTOR OF PLANNING | ____ | X |
| CITY ATTORNEY | X | ____ |
| CITY ADMINISTRATIVE OFFICER | ____ | ____ |
| OTHER | ____ | ____ |

BY
CITY CLERK
DEPUTY
2009 JUN 22  PM 3:30
RECEIVED
CITY CLERK'S OFFICE

DATE OF MAYOR APPROVAL, DEEMED APPROVED OR *VETO    ___JUN 22 2009___
(*VETOED ORDINANCES MUST BE ACCOMPANIED WITH OBJECTIONS IN WRITING PURSUANT TO CHARTER SEC. 250(b) (c)

**(CITY CLERK USE ONLY PLEASE DO NOT WRITE BELOW THIS LINE)**

DATE RECEIVED FROM MAYOR ___JUN 22 2009___        ORDINANCE NO. ___180749___

DATE PUBLISHED ___JUN 24 2009___   DATE POSTED _____   EFFECTIVE DATE ___JUN 24 2009___

ORD OF INTENT:  HEARING DATE _____   ASSESSMENT CONFIRMATION _____

ORDINANCE FOR DISTRIBUTION: YES ____ NO ____

Calagend\090964.ord



## VERBAL MOTION

I HEREBY MOVE that Council APPROVE the following recommendations of the City Attorney (Item #56, Council file 09-0964) relative to the Medical Marijuana Dispensaries ICO, SUBJECT TO THE APPROVAL OF THE MAYOR:

1.  FIND that this action is exempt from California Environmental Quality Act (CEQA) pursuant to State CEQA Guidelines Section 15061(b)(3) and Article II, Section 1(m) of the City's Guidelines.

2.  ADOPT the June 12, 2009 FINDINGS of the Director of Planning as the Findings of the Council.

3.  PRESENT and ADOPT the accompanying ORDINANCE, disapproved by the Director of Planning, on behalf of City Planning Commission, amending the Medical Marijuana Dispensaries ICO No. 179027 to extend the provisions of Ordinance No. 179027 until March 15, 2010, and delete the hardship exemption provision from the Ordinance.

CPC 2007-0280 ICO

PRESENTED BY_____
                          DENNIS P. ZINE
                          Councilmember, 3rd District

PRESENTED BY_____
                          JOSE HUIZAR
                          Councilmember, 14th District

June 19, 2009

CF 09-0964

## ADOPTED

JUN 1 9 2009

LOS ANGELES CITY COUNCIL

TO THE MAYOR FORTHWITH

MAYOR WITH FILE

**EXHIBIT C**

ORDINANCE NO. ~181069

An ordinance adding Article 5.1 to Chapter IV of the Los Angeles Municipal Code and amending Section 91.107.3.2 of the Los Angeles Municipal Code to implement the Compassionate Use Act and the Medical Marijuana Program Act consistent with the provisions of the Acts, but without violating state or federal law.

WHEREAS, although the possession and sale of marijuana remain illegal under both state and federal law, California voters approved the Compassionate Use Act ("CUA") in 1996 to exempt seriously ill patients and their primary caregivers from criminal liability for possession and cultivation of marijuana for medical purposes; and

WHEREAS, the Medical Marijuana Program Act of 2003 ("MMPA") provides for the association of primary caregivers and qualified patients to cultivate marijuana for specified medical purposes and also authorizes local governing bodies to adopt and enforce laws consistent with its provisions; and

WHEREAS, the City of Los Angeles enacted an Interim Control Ordinance in 2007 for the temporary regulation of medical marijuana facilities through a registration program, which resulted in the unintended proliferation of storefront medical marijuana dispensaries to a number currently estimated to exceed 500 such locations, presenting a substantial risk of unlawful cultivation, sale, and the illegal diversion of marijuana for non-medical uses; and

WHEREAS, there have been recent reports from the Los Angeles Police Department and the media of an increase in and escalation of violent crime at the location of medical marijuana dispensaries in the City of Los Angeles, and the California Police Chiefs Association has compiled an extensive report detailing the negative secondary effects associated with medical marijuana dispensaries; and

WHEREAS, medical marijuana that has not been collectively or personally grown constitutes a unique health hazard to the public because, unlike all other ingestibles, marijuana is not regulated, inspected, or analyzed for contamination by state or federal government and may, as with samples recently tested by a U.S. Food and Drug Administration laboratory, contain harmful chemicals that could further endanger the health of persons who are already seriously ill and have impaired or reduced immunities; and

WHEREAS, the City of Los Angeles has a compelling interest in ensuring that marijuana is not distributed in an illicit manner, in protecting the public health, safety and welfare of its residents and businesses, in preserving the peace and quiet of the neighborhoods in which medical marijuana collectives operate, and in providing compassionate access to medical marijuana to its seriously ill residents.

NOW, THEREFORE,

THE PEOPLE OF THE CITY OF LOS ANGELES
DO ORDAIN AS FOLLOWS:

Section 1.  A new Article 5.1 is added to Chapter IV of the Los Angeles Municipal Code to read:

## ARTICLE 5.1

### MEDICAL MARIJUANA COLLECTIVE

### SEC. 45.19.6.  PURPOSES AND INTENT.

It is the purpose and intent of this article to regulate the collective cultivation of medical marijuana in order to ensure the health, safety and welfare of the residents of the City of Los Angeles.  The regulations in this article, in compliance with the Compassionate Use Act, the Medical Marijuana Program Act, and the California Health and Safety Code (collectively referred to as "State Law") do not interfere with a patient's right to use medical marijuana as authorized under State Law, nor do they criminalize the possession or cultivation of medical marijuana by specifically defined classifications of persons, as authorized under State Law.  Under State Law, only qualified patients, persons with identification cards, and primary caregivers may cultivate medical marijuana collectively.  Medical marijuana collectives shall comply with all provisions of the Los Angeles Municipal Code ("Code"), State Law, and all other applicable local and state laws.  Nothing in this article purports to permit activities that are otherwise illegal under state or local law.

### SEC. 45.19.6.1.  DEFINITIONS.

A.  The following phrases, when used in this article, shall be construed as defined in California Health and Safety Code Sections 11006.5, 11018, 11362.5 and 11362.7:

> "Attending physician;"
> "Concentrated Cannabis;"
> "Identification card;"
> "Marijuana;"
> "Person with an identification card;"
> "Primary caregiver;" and
> "Qualified patient."

B.  The following phrases, when used in this article, shall be construed as defined below.  Words and phrases not defined here shall be construed as defined in Sections 11.01, 12.03, 45.19.5, 45.21, and 56.45 of this Code.

2

**"Location."**  The lot or portion of a lot that is used by a medical marijuana collective.

**"Medical marijuana."**  Marijuana used for medical purposes in accordance with California Health and Safety Code Section 11362.5

**"Medical marijuana collective ("collective")."**  An incorporated or unincorporated association, composed solely of four or more qualified patients, persons with identification cards, and designated primary caregivers of qualified patients and persons with identification cards (collectively referred to as "members") who associate at a particular location to collectively or cooperatively cultivate marijuana for medical purposes, in strict accordance with California Health and Safety Code Sections 11362.5, *et seq.*

**"Member engaged in the management."**  A member with responsibility for the establishment, organization, registration, supervision, or oversight of the operation of a collective, including but not limited to members who perform the functions of president, vice president, board member, director, owner, operating officer, financial officer, secretary, treasurer, or manager of the collective.

**"Private medical record."**  Documentation of the medical history of a qualified patient or person with an identification card.  "Private medical record" shall not include the recommendation of an attending physician or doctor for the medical use of marijuana, an identification card, or the designation of a primary caregiver by a qualified patient or by a person with an identification card.

**"Reasonable compensation."**  Compensation commensurate with reasonable wages and benefits paid to employees of IRS-qualified non-profit organizations who have similar job descriptions and duties, required level of education and experience, prior individual earnings history, and number of hours worked.  The payment of a bonus shall not be considered "reasonable compensation."

## SEC. 45.19.6.2.  REGISTRATION.

**A.  Registration Required.**  No collective shall operate until after it has filed a registration form in accordance with the provisions of this article, has paid any adopted registration fees, and its registration has been accepted as complete by the Department of Building and Safety.

**B.  Maximum Number of Collectives.**

1.  The maximum number of collectives in the City shall be capped at 70. However, there may be fewer than 70 collectives if sufficient locations do not exist consistent with Section 45.19.6.3 A.2 of this article for 70 collectives.  To the fullest extent that locations consistent with Section 45.19.6.3 A.2 of this article exist, the

3

70 collectives shall be proportionally distributed by Community Plan Area, based on each Community Plan Area's percentage share of the City's total Community Plan Area population, as estimated by the Department of City Planning as of October 1, 2008, as shown on Table 1, below:

## TABLE 1

| COMMUNITY PLAN AREA ("CPA") | POPULATION | PCT OF TOTAL | # of MMCs |
|---|---|---|---|
| ARLETA-PACOIMA | 105,238 | 2.63% | 2 |
| BEL AIR-BEVERLY CREST | 21,659 | 0.54% | 0 |
| BOYLE HEIGHTS | 92,626 | 2.31% | 2 |
| BRENTWOOD-PACIFIC PALISADES | 57,513 | 1.44% | 1 |
| CANOGA PARK-WEST HILLS-WINNETKA-WOODLAND HILLS | 185,670 | 4.64% | 3 |
| CENTRAL CITY | 31,900 | 0.80% | 0 |
| CENTRAL CITY NORTH | 32,835 | 0.82% | 1 |
| CHATSWORTH-PORTER RANCH | 96,251 | 2.40% | 2 |
| ENCINO-TARZANA | 74,820 | 1.87% | 1 |
| GRANADA HILLS-KNOLLWOOD | 60,843 | 1.52% | 1 |
| HARBOR GATEWAY | 42,075 | 1.05% | 1 |
| HOLLYWOOD | 226,137 | 5.65% | 4 |
| MISSION HILLS-NORTH HILLS-PANORAMA CITY | 145,551 | 3.64% | 3 |
| NORTH HOLLYWOOD-VALLEY VILLAGE | 149,245 | 3.73% | 3 |
| NORTHEAST LOS ANGELES | 258,188 | 6.45% | 5 |
| NORTHRIDGE | 67,415 | 1.68% | 1 |
| PALMS-MAR VISTA-DEL REY | 122,666 | 3.06% | 2 |
| RESEDA-WEST VAN NUYS | 106,125 | 2.65% | 2 |
| SAN PEDRO | 81,921 | 2.05% | 1 |
| SHERMAN OAKS-STUDIO CITY-TOLUCA LAKE-CAHUENGA PASS | 79,028 | 1.97% | 1 |
| SILVERLAKE-ECHO PARK | 82,008 | 2.05% | 1 |
| SOUTH LOS ANGELES | 275,400 | 6.88% | 5 |
| SOUTHEAST LOS ANGELES | 274,583 | 6.86% | 5 |
| SUN VALLEY-LA TUNA CANYON | 93,228 | 2.33% | 2 |
| SUNLAND-TUJUNGA-LAKEVIEW TERRACE-SHADOW HILLS-EAST LA TUNA CANYON | 62,644 | 1.56% | 1 |
| STYLMAR | 79,741 | 1.99% | 1 |
| VAN NUYS-NORTH SHERMAN OAKS | 168,987 | 4.22% | 3 |
| VENICE | 40,943 | 1.02% | 1 |
| WEST ADAMS-BALDWIN HILLS-LEIMERT PARK | 182,584 | 4.56% | 3 |
| WEST LOS ANGELES | 77,012 | 1.92% | 1 |
| WESTCHESTER-PLAYA DEL REY | 54,441 | 1.36% | 1 |
| WESTLAKE | 120,476 | 3.01% | 2 |
| WESTWOOD | 53,491 | 1.34% | 1 |
| WILMINGTON-HARBOR CITY | 80,991 | 2.02% | 1 |
| WILSHIRE | 317,248 | 7.92% | 6 |
| **TOTAL CPA POPULATION AS OF OCT 1, 2008** | **4,001,483** | **100%** | **70** |

4

2.  Notwithstanding the maximum number of collectives described above, every medical marijuana collective, dispensary, operator, establishment, or provider that (1) was registered pursuant to Interim Control Ordinance No. 179,027 with the City Clerk's office on or before November 13, 2007, (2) has operated continuously at its registered location since on or before September 14, 2007, or has both moved once within the City due to an enforcement letter from a federal governmental entity and filed a hardship exemption application pursuant to Interim Control Ordinance No. 179,027, (3) has the same ownership and management as it identified in its registration with the City Clerk's office, (4) has not been cited by the City for a nuisance or public safety violation of State or local law, and (5) complies currently or identifies to the City during the preinspection process a new operating location that meets all of the distance requirements of Section 45.19.6.3 A.2 of this article may be eligible to register and operate if it immediately complies with all provisions of State Law, and within 180 days after the effective date of this ordinance completes its compliance in full with each provision of this article.  Any collectives allowed to register and operate in excess of 70 shall also be proportionally distributed by Community Plan Area, based on each Community Plan Area's percentage share of the City's total Community Plan Area population, as estimated by the Department of City Planning as of October 1, 2008 on Table 1, above.  In determining the number of collectives allowed in each Community Plan Area, the Department of City Planning shall apply these percentages to the total number of collectives that file their intent to register with the City Clerk pursuant to Subsection C.1, below.

3.  The total population of the City, the population of the Community Plan Areas, and whether the citywide and Community Plan Area caps meet the needs of qualified patients, persons with identification cards, and their primary caregivers may be reviewed and the caps may be amended by ordinance after notice and hearing by the City Council.

## C.  Priority Order.

1.  All collectives that meet the requirements set forth in Paragraph 2 of Subsection B, above, and that notify the City Clerk within one week after the effective date of this ordinance of their intention to register under this article at an identified location shall be eligible to apply for preinspection pursuant to Subsection D, below.  The City Clerk shall use the date and time that these collectives registered with the City pursuant to Interim Control Ordinance No. 179,027, as evidenced by the date and time stamp placed on each registration form by the City Clerk, to determine the priority order in which the Department of Building and Safety will conduct the preinspections of these collectives.

2.  If at any time after 180 days following the effective date of this ordinance, the total number of registered collectives in the City falls below 70, the City Clerk may hold one or more drawings for the purpose of determining the priority order in which the Department of Building and Safety will consider preinspection of these

additional collectives. Any collective that notifies the City Clerk within one week after the publication of the date of a priority drawing shall be eligible to participate in the drawings. However, no collective may participate in a drawing if one or more of its owners or members engaged in its management were convicted currently or within the previous 10 years of a felony or a crime of moral turpitude, or are currently on parole or probation for the sale or distribution of a controlled substance.

The City Clerk shall: create the entry form for participation in the drawings; set the deadline for submittal of all entry forms; establish and publish the drawings' dates, times, and places; publish the results of all drawings; and have the authority to promulgate additional drawing rules and regulations. All such rules and regulations shall be published once in a daily newspaper of general circulation in the City, and shall take effect upon publication. A member engaged in the management of the collective must be present at a drawing in order for the collective to participate.

The order established by the City Clerk in the drawing shall be used by the Department of Building and Safety to determine the order in which the Department of Building and Safety will conduct preinspections pursuant to Subsection D, below, of the collectives that are eligible to register pursuant to this subdivision.

D. Preinspection. A collective that is eligible to apply for preinspection pursuant to Subsections B or C, above, may thereafter apply to the Department of Building and Safety for preinspection to verify compliance with the standards set forth in Section 45.19.6.3 A of this article. The collective shall provide the address of the proposed collective location; the name, telephone number, and address of a person authorized to accept service of process for the collective; the name(s), telephone number(s), and address(es) of each member engaged in the management of the collective; and a 1,000-foot radius map signed by a licensed civil engineer, architect or land surveyor, that locates and identifies all sensitive uses set forth in Section 45.19.6.3 A.2 of this article. A preinspection fee pursuant to Section 91.107.3.2 of this Code, plus a research fee for a minimum of three hours of time pursuant to Section 98.0415 (f) of this Code, shall be paid to the Department of Building and Safety at the time of a request for preinspection. The Department of Building and Safety shall proceed by priority order within each Community Plan Area to evaluate the compliance of the proposed collectives with the requirements of Section 45.19.6.3 A of this article. Once the Department of Building and Safety has determined that the maximum number of collectives authorized by Subsection B of this section complies, the Department of Building and Safety shall stop determining the compliance of more collectives. Any collective not in compliance with the requirements of Section 45.19.6.3 A of this article, as determined by the Department of Building and Safety, or not considered for compliance because the cap had already been met, shall be notified by the Department of Building and Safety that it is disqualified from starting the preinspection and registration process and that it may enter any future drawing conducted in accordance with Subsection C, above.

6

E. **Notice of Preinspection.** Prior to accepting a request for preinspection, the Department of Building and Safety shall require proof that the collective has provided written notice to the Police Department, all property owners and occupants within and outside the City that are within 1,000 feet of the exterior boundaries of the location, and to the City Council member of the district in which the collective is proposed to be located, the Certified Neighborhood Council, and any Business Improvement District ("BID") representing the area in which the collective is located, of: the preinspection request; the proposed location of the collective; the name, telephone number, and address of a person authorized to accept service of process for the collective; the name(s), telephone number(s), and address(es) of each member engaged in the management of the collective; and the onsite telephone number at the collective and the name of the member engaged in the management of the collective who is responsible for receiving, logging, and responding to complaints regarding the collective. This notification shall be sent by certified mail, postage prepaid, and return receipt requested. Notices to property owners shall be sent to the last known name and address as shown on the records of the City Clerk or the records of the County Assessor; notices to occupants of all residential, commercial and industrial property can be mailed to "occupant". Proof of mailing shall be established if the collective files an affidavit of mailing with the Department of Building and Safety certifying the date on which the notice was sent, a copy of the notice, and a complete list of the names and addresses where the notice was sent.

F. **Registration Form.** Upon receipt of a Department of Building and Safety preinspection report verifying compliance with the standards set forth in Section 45.19.6.3 A of this article, the collective shall file a registration form with the Department of Building and Safety. The registration form shall require the following accurate and truthful information: the address and physical description (e.g., one-story commercial building, etc.) of the proposed location at and upon which the collective will be located; the name, telephone number, and address of a person authorized to accept service of process for the collective; the name(s), telephone number(s), and address(es) of each member engaged in the management of the collective; the onsite telephone number at the collective and the name of the member engaged in the management of the collective who is responsible for receiving, logging, and responding to complaints regarding the collective; and any other information reasonably required to show that the collective complies with this article. In addition, the registration form shall confirm the consent by the collective, without requirement for a search warrant, subpoena or court order, for the inspection and copying by the Police Department of the recordings and records required to be maintained under Sections 45.19.6.3, 45.19.6.4, and 45.19.6.5 of this article, except that private medical records shall be made available by the collective to the Police Department only pursuant to a properly executed search warrant, subpoena, or court order.

The collective shall file an updated registration form quarterly, but only if there were changes during the previous quarter to any of the information provided in the initial registration form or any change in status of compliance with the regulations set forth in Section 45.19.6.3 of this article. If an enforcement action has been filed against the

collective for any violation of this article, the updated registration form shall include the names of all of the members of the collective. A change of location cannot be accomplished by an updated registration form, but shall instead require a new preinspection and registration. Each and every member who is engaged in the management of the collective shall print his or her name and sign the initial registration form and any subsequent updated registration form, under penalty of perjury certifying that all information contained in the registration form is true and correct. It shall be the sole responsibility of the members engaged in the management of the collective to ensure that all forms and documents are submitted as required by this article and that the information provided is accurate, complete and timely submitted.

G. **Additional Registration Documents.** As attachments to the original and any subsequently updated registration form, the collective shall provide to the Department of Building and Safety: (1) proof that the property owner of the location, and landlord if applicable, was given written notice sent by certified mail, postage prepaid, and return receipt requested that the collective intends to file the registration form and that the owner of the location, and landlord if applicable, has received a copy of the information contained in the registration form; (2) for each member engaged in the management of the collective, a fully legible copy of one government-issued form of identification, such as a social security card, a state driver's license or identification card, or a passport; and (3) the collective's Certificate of Occupancy within 10 days of issuance.

H. **Registration Timetables.** All collectives that meet the requirements described in Subsection B, above, shall comply with the following timetable: (1) they shall notify the City Clerk of their intent to register under this article within one week after the effective date of this ordinance; (2) they shall complete their preinspection obligations under Subsections D and E, above, within thirty (30) days after receiving priority under Subsection C, above, to apply for preinspection; and (3) they shall comply in full with all registration and other provisions of this article within 180 days after the effective date of this ordinance. All other collectives shall comply with the following timetable: (1) they shall notify the City Clerk of their intent to register under this article within one week after the publication by the City Clerk of the date of a priority drawing that will be conducted because the total number of registered collectives in the City has fallen below 70; and (2) they shall complete their preinspection obligations under Subsections D and E, above, within thirty (30) days after receiving priority order under Subsection C, above, to apply for preinspection; and (3) they shall comply in full with all registration and other provisions of this article within 180 days after the publication by the City Clerk of the date of a priority drawing that will be conducted because the total number of registered collectives in the City has fallen below 70. A collective that does not comply with its applicable timetable shall be disqualified from further participation in the registration process.

For the purposes of this subsection, a collective shall be in compliance with Section 45.19.6.3 A of this article if it has obtained all required building permit(s) and the permit(s) is valid and has not been expired by the Department of Building and Safety pursuant to the provisions of Section 98.0602 of the Code. Notwithstanding the provisions of Section

8

12.26 A.3 of the Code, the submission of plans sufficient for a complete plan check and the payment of a fee shall not confer a vested right to establish a collective. The provisions of Section 91.106.4.3.1 of this Code shall apply to any building permit issued for a collective.

I.  **Completed Registration.**  The Department of Building and Safety, after verification that all required fees have been paid, shall mail proof of a completed registration and any subsequent updated registration to the person authorized to accept service of process on behalf of the collective, to the owner of the location, the City Council member of the district in which the collective is located, the Certified Neighborhood Council, and to any applicable Business Improvement District ("BID") in which the collective is located.

J.  **Term of Registration/Renewal.**   Each registration shall expire two years from the date the Department of Building and Safety mails proof of the completed registration to the person authorized to accept service of process on behalf of the collective or upon the sunset of this article, whichever occurs first.  In the event of an extension of the sunset of this ordinance, a collective that has operated at all times in strict compliance with this article may seek to renew its registration 90 days prior to the registration's expiration.  The process for renewal of the registration shall be the same as the process for the original registration as set forth in this section.  Upon registration expiration, the collective shall cease all operations.

K.  **Registration Null and Void.**  A registration accepted as complete under this article shall become null and void upon the cessation of marijuana cultivation at the location for 90 days or longer, upon the relocation of the collective to a different location, upon conviction of the collective or any of its members for a violation of a provision of this article, two years after the issuance of the registration as set forth in Subsection I, above, or upon the expiration or sunset of this article.

SEC. 45.19.6.3.  REGULATIONS.

The location at or upon which a collective cultivates and provides medical marijuana to its members must meet the following requirements:

A.  **Preinspection Requirements.**

1.  The location shall comply with the provisions of Chapter I and IX of the Code;

2.  The location of the collective shall comply with the following distance requirements:

a.  No collective shall be located within a 1,000-foot radius of a school, public park, public library, religious institution, licensed child care facility, youth center, substance abuse rehabilitation center, or any other

9

medical marijuana collective(s). The distances specified in this paragraph shall be the horizontal distance measured in a straight line from the property line of the school, public park, public library, religious institution, licensed child care facility, youth center, substance abuse rehabilitation center, or other medical marijuana collective(s), to the closest property line of the lot on which the collective is located without regard to intervening structures. This provision shall not apply to a collective that is also a licensed residential medical or eldercare facility; and

b. No collective shall be located on a lot abutting, across the street or alley from, or having a common corner with a residentially zoned lot or a lot improved with a residential use, including a mixed use residential building. This provision shall not apply to a collective that is also a licensed residential medical or eldercare facility;

3. Exterior building lighting and parking area lighting for the location must be in compliance with Sections 93.0104, 93.0107 and 93.0117 of the Code. In addition, the location shall be equipped with lighting fixtures of sufficient intensity to illuminate all interior areas of the lot with an illumination of not less than 1.5 foot-candles evenly distributed as measured at floor level, except that a licensed residential medical or eldercare facility shall not be required to comply with this provision;

4. No interior illumination of any exterior signs or any interior signs visible from the exterior shall be allowed;

5. Windows and roof hatches of the building or portion of the building where the collective is located shall be secured from the inside with bars so as to prevent unauthorized entry, and shall be equipped with latches that may be released quickly from the inside to allow exit in the event of emergency in compliance with all applicable building code provisions;

6. Exterior doors to the collective shall remain locked from the outside to prevent unauthorized ingress to the premises of the collective. Ingress shall be allowed by means of a remote release operated from within the premises of the collective. In all cases, doors shall remain openable from the inside to allow egress without the use of a key or special knowledge. If installed, access-controlled egress doors shall comply with Section 1008.1.3.4 of the California Building Code;

7. A sign shall be posted in a conspicuous location inside the structure at the location advising: "This collective is registered in accordance with the laws of the City of Los Angeles. The sale of marijuana and the diversion of marijuana for non-medical purposes are violations of State law. The use of marijuana may impair a person's ability to drive a motor vehicle or operate heavy machinery.

10

Loitering at the location of a medical marijuana collective for an illegal purpose is prohibited by California Penal Code Section 647(h)"; and

8.  A sign shall be posted at the entrance to the location containing the name and functioning telephone number of a 24-hour on-call member engaged in the management of the collective who shall receive, log, and respond to complaints and other inquires on behalf of the collective.

### B.  Conditions of Operation.

1.  The location shall be monitored at all times by web-based closed-circuit television for security purposes.  The camera and recording system must be of adequate quality, color rendition and resolution to allow the ready identification of any individual committing a crime anywhere on or adjacent to the location.  The recordings shall be maintained for a period of not less than ninety days and shall be made available by the collective to the Police Department upon request;

2.  The location shall have a centrally-monitored fire and burglar alarm system and the building or the portion of the building where the collective is located shall contain a fire-proof safe;

3.  No cultivation of medical marijuana at the location shall be visible with the naked eye from any public or other private property, nor shall cultivated marijuana or dried marijuana be visible from the building exterior.  No cultivation shall occur at the location unless the area devoted to the cultivation is secured from public access by means of a locked gate and any other security measures necessary to prevent unauthorized entry;

4.  No manufacture of concentrated cannabis in violation of California Health and Safety Code section 11379.6 is allowed;

5.  No collective shall be open or provide medical marijuana to its members between the hours of 8:00 p.m. and 10:00 a.m.  This prohibition shall not apply to a qualified patient's use of marijuana for his or her own medical needs if the qualified patient's permanent legal residence is the location;

6.  No collective shall operate for profit.  Cash and in-kind contributions, reimbursements, and reasonable compensation provided by members towards the collective's actual expenses of the growth, cultivation, and provision of medical marijuana shall be allowed provided that they are in strict compliance with State Law.  All such cash and in-kind amounts and items shall be fully documented in accordance with Section 45.19.6.4 of this article;

7.  No persons under the age of eighteen shall be allowed at the location, unless that minor is a qualified patient or person with an identification card and

11

accompanied by his or her licensed attending physician, parent or documented legal guardian;

8.  No collective shall possess more dried marijuana or plants per member other than the amounts permitted pursuant to State Law.  No collective shall possess or provide marijuana other than marijuana that was cultivated by the collective in strict accordance with State Law and this article;

9.  The light fixtures required in Section 45.19.6.3 A.3, above, shall be turned on from dusk to dawn;

10.  No collective may provide medical marijuana to any persons other than its members who participate in the collective cultivation of marijuana at or upon the location of that collective.  No medical marijuana provided to a primary caregiver may be supplied to any person(s) other than the primary caregiver's qualified patient(s) or person(s) with an identification card;

11.  No collective shall cause or permit the sale, dispensing, or consumption of alcoholic beverages at the location or in the parking area of the location;

12.  No dried medical marijuana shall be stored in buildings that are not completely enclosed, or stored in an unlocked vault or safe, or other unsecured storage structure; nor shall any dried medical marijuana be stored in a  safe or vault that is not bolted to the floor or structure of the facility;

13.  Medical marijuana may not be inhaled, smoked, eaten, ingested, or otherwise consumed at the location, in the parking areas of the location, or in those areas restricted under the provisions of California Health and Safety Code Section 11362.79.  This prohibition shall not apply to a qualified patient's use of marijuana for his or her own medical needs if the qualified patient's permanent legal residence is the location, nor shall this prohibition limit the exceptions provided in local and state law that permit smoking in designated areas within licensed residential medical and eldercare facilities;

14.  Only members of the collective may be engaged in the management of the collective.  A person who has been convicted currently or within the previous 10 years of a felony or a crime of moral turpitude, or who is currently on parole or probation for the sale or distribution of a controlled substance, as determined by the Police Department, shall not be engaged directly or indirectly in the management of the collective and, further, shall not manage, handle, or benefit from the receipts and expenses of the collective.  Verification shall be processed and received by the Police Department in accordance with the State of California Department of Justice guidelines.   No person may be engaged in the management of more than one collective located within the City;

12

15.  No qualified patient, person with an identification card, or primary caregiver may be a member, at the same time, of more than one collective located within the City, except that in the event of a medical emergency, a qualified patient, person with an identification card, or primary caregiver may obtain medical marijuana sufficient to meet that medical emergency from another collective located within the City. In addition to all other required documentation for a medical emergency, the qualified patient, person with an identification card, or primary caregiver shall provide written proof of the medical emergency and, as applicable, his or her attending physician or doctor recommendation, identification card, and, in the case of a primary caregiver, the patient designation to both the member's collective and to the collective that is distributing the emergency medical marijuana.  This written documentation shall be maintained in the records of both collectives;

16.  Collectives shall not store more than $200.00 in cash overnight at the location and shall make twice daily bank drops that include all cash collected on that day;

17.  Collectives shall provide a state-licensed and uniformed security guard patrol for a two-block radius surrounding the location during all hours of operation.  Security guards shall not possess firearms or tasers;

18.  Collectives shall operate and maintain an onsite 24-hour telephone number at the collective for receiving complaints and other inquiries regarding the collective.  A member engaged in the management of the collective shall be responsible for receiving, logging, and responding to these complaints and other inquires.  The log shall be maintained in the records of the collective; and

19.  The results of the testing performed pursuant to Section 45.19.6.5 of this article shall be posted in a prominent location in the interior of the collective.

## SEC. 45.19.6.4.  MAINTENANCE OF RECORDS.

A medical marijuana collective shall maintain records at the location accurately and truthfully documenting:  (1) the full name, address, and telephone number(s) of the owner, landlord and/or lessee of the location; (2) the full name, address, and telephone number(s) of all members who are engaged in the management of the collective and the exact nature of each member's participation in the management of the collective; (3) the full name, address, and telephone number(s) of all patient members to whom the collective provides medical marijuana, a copy of a government-issued identification card for all patient members, and a copy of every attending physician's or doctor's recommendation or patient identification card; (4) the full name, address, and telephone number(s) of all primary caregiver members to whom the collective provides medical marijuana and a copy of every written designation(s) by the primary caregiver's qualified patient(s) or the primary caregiver's identification card; (5) written documentation of all circumstances under which the collective provided medical marijuana to a non-member, including but not limited to the recipient's full name, address, and telephone number,

00026-40-

amount of medical marijuana received, and medical emergency justification; (6) all receipts of the collective, including but not limited to all contributions, reimbursements, and reasonable compensation, whether in cash or in kind, and all expenditures incurred by the collective for the cultivation of medical marijuana; (7) an inventory record documenting the dates, amounts, and content testing results of all marijuana cultivated by the collective, including the amounts of marijuana stored at the location at any given time; (8) a log documenting each transfer of marijuana reflecting the amount transferred, the date transferred, and the full name of the member to whom it was transferred; (9) a log documenting the date, nature, and response by the collective to all complaints received by the collective pursuant to Section 45.19.6.3 B.18 of this article; (10) a copy of the annual audit reports required pursuant to Section 45.19.6.5 A of this article; (11) the testing log required to be maintained pursuant to Section 45.19.6.5 C of this article; and (12) proof of registration with the Department of Building and Safety in conformance with Section 45.19.6.2 of this article, including evidence of an accepted registration form.  These records shall be maintained by the collective for a period of five years and shall be made available by the collective to the Police Department upon request, except that private medical records shall be made available by the collective to the Police Department only pursuant to a properly executed search warrant, subpoena, or court order.  In addition to all other formats that the collective may maintain, these records shall be stored by the collective at the location in a printed format in its fire-proof safe.  Any loss, damage or destruction of the records shall be reported to the Police Department within 24 hours of the loss, destruction or damage.  In addition to all other formats that the collective may maintain, these records shall be stored by the collective at the location in a printed format in its fire-proof safe.  Any loss, damage or destruction of the records shall be reported to the Police Department within 24 hours of the loss, destruction or damage.

## SEC. 45.19.6.5.  AUDITS AND TESTING.

A.  **Annual Audits.**  No later than February 15 of every year, each collective shall file with the City Controller an audit of its operations of the previous calendar year, completed and certified by an independent certified public accountant in accordance with generally accepted auditing and accounting principles.  The audit shall include but not be limited to a discussion, analysis, and verification of each of the records required to be maintained pursuant to Section 45.19.6.4 of this article.

B.  **Testing of Medical Marijuana.**  The collective shall use an independent and certified laboratory to analyze a representative sample of dried medical marijuana and a representative sample of edible marijuana for pesticides and any other regulated contaminants pursuant to established local, state, or federal regulatory or statutory standards at levels of sensitivity established for the food and drug supply before providing the medical marijuana to its members.  Any medical marijuana from which the representative sample analysis tested positive for a pesticide or other contaminant at a level which exceeds the local, state, or federal regulatory or statutory standard for the food and drug supply shall not be provided to members and shall be destroyed forthwith.  Any medical marijuana provided to members shall be properly labeled in strict compliance with state and local laws.

14

**C. Testing Log.** The collective shall maintain a written log at the location documenting the date, type, and amount of marijuana tested; the name of the laboratory where the marijuana was tested; the laboratory report containing the results of the testing, including the name and level of the substance detected; and the disposition of the marijuana from which the contaminated sample was obtained, including the amount of marijuana and the date and manner of disposition.

### SEC. 45.19.6.6.  INSPECTION AND ENFORCEMENT RESPONSIBILITIES.

The Department of Building and Safety may enter and inspect the location of any collective between the hours of 10:00 a.m. and 8:00 p.m., or at any reasonable time, to ensure compliance with Section 45.19.6.3 A of this article.  In addition, a designated unit within the Police Department may enter and inspect the location of any collective and the recordings and records maintained pursuant to Sections 45.19.6.3, 45.19.6.4, and 45.19.6.5 of this article between the hours of 10:00 a.m. and 8:00 p.m., or at any reasonable time, to ensure compliance with this article, except that the inspection and copying of private medical records shall be made available to the Police Department only pursuant to a properly executed search warrant, subpoena, or court order.  It is unlawful for any owner, landlord, lessee, member (including but not limited to a member engaged in the management), or any other person having any responsibility over the operation of the collective to refuse to allow, impede, obstruct or interfere with an inspection, review or copying of records and closed-circuit monitoring authorized and required under this article, including but not limited to, the concealment, destruction, and falsification of any recordings, records, or monitoring.

### SEC. 45.19.6.7.  EXISTING MEDICAL MARIJUANA OPERATIONS.

Any existing medical marijuana collective, dispensary, operator, establishment, or provider that does not comply with the requirements of this article must immediately cease operation until such time, if any, when it complies fully with the requirements of this article; except that any medical marijuana collective, dispensary, operator, establishment, or provider that meets each of the requirements described in Section 45.19.6.2 B.2 of this article shall have 180 days from the effective date of this article during which to fully comply with the requirements of this article or to cease operation.  No medical marijuana collective, dispensary, operator, establishment, or provider that existed prior to the enactment of this article shall be deemed to be a legally established use under the provisions of this article, and such medical marijuana collective, dispensary, operator, establishment, or provider shall not be entitled to claim legal nonconforming status.

### SEC. 45.19.6.8  COMPLIANCE WITH THIS ARTICLE AND STATE LAW.

**A.** It is unlawful for any person to cause, permit or engage in the cultivation, possession, distribution or giving away of marijuana for medical purposes except as provided in this article, and pursuant to any and all other applicable local and state laws.

B.  It is unlawful for any person to cause, permit or engage in any activity related to medical marijuana except as provided in Health and Safety Code Sections 11362.5 *et seq.*, and pursuant to any and all other applicable local and state laws.

C.  It is unlawful for any person to knowingly make any false, misleading or inaccurate statements or representations in any forms, records, filings or documentation required to be maintained, filed or provided to the City under this article, or to any other local, state or federal government agency having jurisdiction over any of the activities of collectives.

D.  It shall be the sole responsibility of the members engaged in the management of the collective to ensure that the collective is at all times operating in a manner compliant with all applicable state laws and this article.  Nothing in this article shall be construed as authorizing any actions which violate state law with regard to the cultivation, transportation, provision, and sale of medical marijuana.

**SEC. 45.19.6.9.  VIOLATION AND ENFORCEMENT.**

Each and every violation of this article shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by Section 11.00 of this Code.  Additionally, as a nuisance per se, any violation of this article shall be subject to injunctive relief, revocation of the collective's registration, revocation of the certificate of occupancy for the location, disgorgement and payment to the City of any and all monies unlawfully obtained, costs of abatement, costs of investigation, attorney fees, and any other relief or remedy available at law or equity.  The City may also pursue any and all remedies and actions available and applicable under local and state laws for any violations committed by the collective and persons related or associated with the collective.

Notwithstanding an initial verification of compliance by the collective with the preinspection requirements set forth in Section 45.19.6.3 A of this article prior to the filing of the registration form, any collective later found to be in violation of any of the preinspection requirements at any time is subject to the enforcement provisions provided in this section.

**SEC. 45.19.6.10.  SUNSET CLAUSE.**

The provisions of this article shall sunset two years after the effective date of this ordinance and all collectives shall cease operation immediately, unless the City Council adopts an ordinance to extend these provisions.

Sec. 2.  Section 91.107.3.2 of the Los Angeles Municipal Code is amended by adding a new item 5 to read:

5.  **Medical Marijuana Collective Preinspection.**  A preinspection fee pursuant to Section 45.19.6.2 D of the Los Angeles Municipal Code shall be

16

collected by the Department to verify compliance with Section 49.19.6.3 A of the Los Angeles Municipal Code. The preinspection fee shall be in addition to any other fee that the Department determines is necessary due to the nature of the work involved.

Sec. 3. **Operative Date.**

This ordinance shall not become effective until the registration fee specified in Section 1 of this ordinance becomes effective.

Sec. 4. **Severability.** Pursuant to the provisions of Los Angeles Municipal Code Section 11.00 (k), if any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions of this ordinance which can be implemented without the invalid provision, and, to this end, the provisions of this ordinance are declared to be severable.

17

Sec. 5  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that the foregoing ordinance was introduced at the meeting of the Council of the City of Los Angeles ___JAN 1 9 2010___, and was passed at its meeting of ___JAN 2 6 2010___.

JUNE LAGMAY, City Clerk

By _____

   Deputy

FEB 0 3 2010

Approved _____

Mayor _____

Approved as to Form and Legality

CARMEN A. TRUTANICH, City Attorney

By _____

   SHARON SIEDORF CARDENAS
   Assistant City Attorney

Date ___January 19, 2010___

File No. CF 08-0923

M:\Real Prop_Env_Land Use\Land Use\Sharon Cardenas\Ordinances\MMOrdinance1192010Final.doc

18

# CITY OF LOS ANGELES
### CALIFORNIA

JUNE LAGMAY
City Clerk

HOLLY L. WOLCOTT
Executive Officer



Office of the
CITY CLERK

Council and Public Services
Room 395, City Hall
Los Angeles, CA 90012
General Information - (213) 978-1133
Fax: (213) 978-1040

KONRAD CARTER
Acting Chief, Council and Public Services
Division

www.cityclerk.lacity.org

ANTONIO R. VILLARAIGOSA
MAYOR

February 4, 2010

To All Interested Parties:

The City Council adopted the action(s), as attached, under Council file No.
08-0923, at their meetings held January 19, 2010 and January 26, 2010.

City Clerk
VCW

An Equal Employment Opportunity - Affirmative Action Employer

TIME LIMIT FILES
ORDINANCES

**FORTHWITH**

Mayor's Time Stamp
OFFICE OF THE MAYOR
RECEIVED

2010 JAN 26  PM 3: 55

CITY OF LOS ANGELES

City Clerk's Time Stamp
CITY CLERK'S OFFICE

2010 JAN 26  PM 3: 53

CITY CLERK

BY _____
                    DEPUTY

COUNCIL FILE NUMBER ____08-0923____          COUNCIL DISTRICT_____

COUNCIL APPROVAL DATE ___JANUARY 26, 2010___   LAST DAY FOR MAYOR TO ACT ___FEB 05 2010___

ORDINANCE TYPE: ____ Ord of Intent ____ Zoning ____ Personnel ____ General

____ Improvement ___X_ LAMC ____ LAAC ____ CU or Var Appeals - CPC No. _____

SUBJECT MATTER: ADDING ARTICLE 5.1 TO CHAPTER IV OF THE LOS ANGELES MUNICIPAL CODE
(LAMC) AND AMENDING SECTION 91.107.3.2 OF THE LAMC TO IMPLEMENT THE
COMPASSIONATE USE ACT AND THE MEDICAL MARIJUANA PROGRAM ACT
CONSISTENT WITH THE PROVISIONS OF THE ACTS, BUT WITHOUT VIOLATING
STATE OR FEDERAL LAW [SECTION 45.19.6.3.A.2(A) - 1,000-FOOT RADIUS FROM
SENSITIVE USES REQUIREMENT]

|  | APPROVED | DISAPPROVED |
|---|---|---|
| PLANNING COMMISSION | _____ | _____ |
| DIRECTOR OF PLANNING | _____ | _____ |
| CITY ATTORNEY | X | _____ |
| CITY ADMINISTRATIVE OFFICER | _____ | _____ |
| OTHER | _____ | _____ |

BY
CITY CLERK
DEPUTY

2010 FEB -3  PM 4: 54
RECEIVED
CITY CLERK'S OFFICE

FEB 03 2010

DATE OF MAYOR APPROVAL, DEEMED APPROVED OR *VETO _____
(*VETOED ORDINANCES MUST BE ACCOMPANIED WITH OBJECTIONS IN WRITING PURSUANT TO CHARTER SEC. 250(b) (c)

**(CITY CLERK USE ONLY PLEASE DO NOT WRITE BELOW THIS LINE)**

DATE RECEIVED FROM MAYOR ___FEB 03 2010___          ORDINANCE NO.___181069___

DATE PUBLISHED ___FEB 11 2010___   DATE POSTED _____   EFFECTIVE DATE ___MAR 14 2010___

ORD OF INTENT: HEARING DATE _____   ASSESSMENT CONFIRMATION _____

ORDINANCE FOR DISTRIBUTION: YES ____ NO ____

Calagend\080923.ord

## VERBAL MOTION

I HEREBY MOVE that Council ADOPT following recommendations (Item #14, Council file No. 08-0923) relative to adding Article 5.1 to Chapter IV of the Los Angeles Municipal Code (LAMC) and amending Section 91.107.3.2 of the LAMC to implement the Compassionate Use Act and the Medical Marijuana Program Act consistent with the provisions of the Acts, but without violating state or federal law; SUBJECT TO THE APPROVAL OF THE MAYOR:

1.  FIND that adoption of this ordinance is exempt from the California Environmental Quality Act (CEQA) Guidelines sections 15060(c)(2) and (3) because it will not result in a direct or reasonably foreseeable indirect physical change in the environment, since it merely establishes regulations for medical marijuana collectives and will result in a substantial decrease in the number of locations that are currently in existence, and the City's CEQA Guidelines Article II, Section 1 (General Exemption) because it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment; and further, DIRECT staff to file a "Notice of Exemption" as permitted by the CEQA.

2.  PRESENT and ADOPT the accompanying ORDINANCE (version "B") adding Article 5.1 to Chapter IV of the LAMC and amending Section 91.107.3.2 of the LAMC to implement the Compassionate Use Act and the Medical Marijuana Program Act consistent with the provisions of the Acts, but without violating state or federal law.


PRESENTED BY_____
                          ED REYES
                          Councilmember, 1st District


PRESENTED BY_____
                          TONY CARDENAS
                          Councilmember, 6th District


January 19, 2010

CF 08-0923

*motion*
ADOPTED
JAN 1 9 2010
LOS ANGELES CITY COUNCIL

*ORD*
ADOPTED
JAN 2 6 2010
LOS ANGELES CITY COUNCIL

JAN 1 9 2010 _ ORDINANCE OVER TO _January 26, 2010_

<u>**VERBAL MOTION**</u>

I HEREBY MOVE that Council REQUEST the City Attorney to amend Section 45.19.6.2 B2 (2) of the ordinance to add the language below:

"(2) has operated continuously at its registered location since on or before September 14, 2007, or has both, moved once due to an enforcement letter from a federal governmental entity and filed a hardship exemption pursuant to Ordinance No. 179027."

PRESENTED BY_____
                              JOSE HUIZAR
                              Councilmember, 14th District


PRESENTED BY_____
                              GREIG SMITH
                              Councilmember, 12th District


January 19, 2010

CF 08-0923a.mot


**ADOPTED**

JAN 1 9 2010

**LOS ANGELES CITY COUNCIL**